**INTERNATIONAL CARGO & SURETY INSURANCE COMPANY (Insurer for Data Memory Corporation), Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 90–01–00042.**

United States Court of International Trade.

Nov. 15, 1991.

Glad & Ferguson, Edward N. Glad, Los Angeles, Cal., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Mark S. Sochaczewsky, U.S. Dept. of Justice, Civ. Div., and Edward N. Maurer, U.S. Customs Service, Washington, D.C., of counsel, for defendant.

## OPINION

RESTANI, Judge:

Plaintiff, International Cargo and Surety Insurance Company ("International") brought this action pursuant to 28 U.S.C. § 1581(a) (1988), contesting denial by the United States Customs Service ("Customs") of its protest concerning liquidation of an entry of merchandise. International contends that the merchandise was liqui-

dated by operation of law at the rate of duty assessed at the time of entry. Defendant contends that it extended the time for liquidation and additional duties were properly assessed. The case is before the court on cross motions for summary judgment.

## BACKGROUND

International is the surety for Data Memory Corporation, the importer of computer disk drives [1] that entered Los Angeles, California on September 2, 1987. At the time of entry, the Treasury Department and Customs Service Headquarters ("Headquarters") were reconsidering classification of data-processing peripheral devices in light of a July 1987 Customs ruling. On August 14, 1987, Headquarters directed all district directors to withhold liquidation of entries of data-processing peripheral devices until further notice. Customs claims that notices extending the time for liquidation were printed on February 6, 1988, and mailed to Data Memory Corporation and International on approximately February 9, 1988.[2] International denies that it received notice of the extension.

On March 18, 1988, Headquarters notified the Los Angeles district to resume liquidation of data-processing peripheral devices, and provided guidelines for classification. The guidelines state that classification depends on design and use. Disk drives designed for incorporation into data processing units are classified as automatic data-processing parts under item 676.54 of the Tariff Schedules of the United States ("TSUS"), whereas "stand-alone devices" are classified as office machines under item 676.30, TSUS.

To classify the disk drives in this case in accordance with the guidelines, the Los Angeles district needed information about design and use. On June 20, 1988, Customs issued a Request for Information (Form CF 28) to the importer. The importer failed to respond. On October 4, 1988, Customs is-

---

1. International describes the merchandise as "floppy disks"; the government claims entry papers establish the merchandise consists of "disk drives." As International did not respond to the government's motion, the court assumes the government is correct.

2. In support of this claim, Customs has submitted declarations from two computer specialists. These declarations are discussed *infra*.

sued a Notice of Action (Form CF 29), stating that as the importer had failed to provide the requested information the disk drives would be classified as office machines, dutiable at 3.7 percent ad valorem.[3] The entry was liquidated on October 21, 1988.

Both International and the government move for summary judgment. International has not responded to the government's motion.

## STANDARD OF REVIEW

■ A decision to extend the time to liquidate an entry will be upheld if it is proper under the statute, and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see Detroit Zoological Society v. United States*, 10 CIT 133, 137–38, 630 F.Supp. 1350, 1356 (1986) (decisions to extend liquidation reviewed for arbitrariness and abuse of discretion); *Bar Bea Truck Leasing Co. v. United States*, 4 CIT 138, 140, 1982 WL 2238 (1982) (citations omitted) (when agency action is discretionary but a law applies, standard of review is arbitrary, capricious or not in accordance with law).

3. Neither the CF 28 nor CF 29 are attached to the government's moving papers. The government states that the CF 29 is attached, but it is not.

4. 19 U.S.C. § 1504(a) provides, in part:
   **(a) Liquidation.**—Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:
   (1) the date of entry of such merchandise;

   .    .    .    .    .

   shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer of record. 19 U.S.C. § 1504(a) (1988).

5. 19 U.S.C. § 1504(b) provides:
   **(b) Extension.**—The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer of record in such form and manner as the Secretary shall prescribe in regulations, if—
   (1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer;
   (2) liquidation is suspended as required by statute or court order; or

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(d), Rules of the Court of International Trade. The party opposing summary judgment must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file', designate 'specific facts showing that there is genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(e)).

## DISCUSSION

1. *Legislative Scheme*

■ Imported merchandise which is not liquidated within one year of its entry date is deemed liquidated at the rate asserted at the time of entry. 19 U.S.C. § 1504(a).[4] Customs may extend the period in which to liquidate an entry under three specific circumstances, including when "information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer." 19 U.S.C. § 1504(b)(1); *see* 19 C.F.R. § 159.12(a)(1)(i).[5] To extend the time to

(3) the importer of record requests such extension and shows good cause therefor.
19 U.S.C. § 1504(b) (1988).
   19 C.F.R. § 159.12(a) provides:
   (a) *Reasons*—(1) *Extension.* The district director may extend the 1–year statutory period for liquidation for an additional period not to exceed 1 year if:
   (i) *Information needed by Customs.* Information needed by Customs for the proper appraisement or classification of the merchandise is not available, or
   (ii) *Importer's Request.* The importer requests an extension in writing before the statutory period expires and shows good cause why the extension should be granted. "Good cause" is demonstrated when the importer satisfies the district director that more time is needed to present to Customs information which will affect the pending action, or there is a similar question under review by Customs.
   (2) *Suspension.* The 1–year liquidation period may be suspended as required by statute or court order.
19 C.F.R. § 159.12(a) (1991).

liquidate, Customs must give notice of the extension to the importer of record in the form and manner prescribed in the regulations. 19 U.S.C. § 1504(b). The regulations provide that Customs shall give notice on Customs Form 4333–A, and the notice shall state the reason for the extension. 19 C.F.R. § 159.12(b). Failure to provide proper notice results in liquidation by operation of law. *Enron Oil Trading and Transportation Co. v. United States,* 15 CIT ——, Slip Op. 91–91 at 3, 1991 WL 200141 (Sept. 27, 1991) (citing *Pagoda Trading Co. v. United States,* 9 CIT 407, 411, 617 F.Supp. 96, 99 (1985), *aff'd,* 804 F.2d 665 (Fed.Cir.1986)).

Prior to the enactment in 1978 of 19 U.S.C. § 1504, Customs could delay liquidation as long as it pleased, with or without giving notice. *Ambassador Div. of Florsheim Shoe v. United States,* 748 F.2d 1560, 1562 (Fed.Cir.1984); *see* S.Rep. No. 95–778, 95th Cong., 2d Sess. 1, 32 (1978), *reprinted in,* 1978 U.S.Code Cong. and Adm.News 2211, 2243. Section 1504 was enacted to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." S.Rep. No. 95–778, 95th Cong., 2d Sess. at 32, *reprinted in,* 1978 U.S.Code Cong. and Adm.News at 2243; *see Ambassador,* 748 F.2d at 1562–63. It was also enacted to accommodate requests from trade partners that the government establish a time limit within which liquidation must occur. *Id.*

### 2. *Extension of Time to Liquidate*

In support of its assertion that proper notice was given, Customs has submitted declarations from two Customs' computer analysts. *See Declaration of William G. Hines ("Hines Declaration")* and *Declaration of Raymond Fouch ("Fouch Declaration")*. These declarations state that Customs does not maintain paper copies of extension notices, but information concerning entries is stored on a computer database called Automated Commercial System ("ACS"). *Hines Declaration,* paras. 2, 4; *Fouch Declaration,* para. 5. Information relating to extension notices is stored with-

in ACS in the "extension/suspension history file"; it is also stored in another ACS file known as the "entry summary header file." *Hines Declaration,* paras. 4–6. When an issue arises concerning notice, Customs usually produces a printout from the extension/suspension history file. *Hines Declaration,* para. 8. In this case, due to a computer error, the extension/suspension history files for the day in question were "lost"; as a substitute, Customs has produced the entry summary header file. *Hines Declaration,* paras. 8–9. This printout contains encoded data, which, according to the declaration, establishes that notices to Data Memory Corporation and International were printed on February 6, 1988; the notices stated that an extension was required because Customs needed to obtain information. *Hines Declaration,* para. 7. As a routine matter, notices are printed at the Customs Data Center in Springfield, Virginia on a Saturday or Sunday and mailed the following Tuesday; therefore, a notice printed on February 6, 1988, a Saturday, would have been mailed on about Tuesday, February 9, 1988. *Fouch Declaration,* paras. 4, 6. Between April 1979 and May 1989, Customs mailed approximately 28,000 notices each week. *Fouch Declaration,* para. 2.

Government officials are entitled to a presumption that their duties are performed in the manner required by law. *Star Sales & Distributing Corp. v. United States,* 10 CIT 709, 710, 663 F.Supp. 1127, 1129 (1986); *see Enron,* 15 CIT at ——, Slip Op. 91–91 at 4. In this case, therefore, a presumption arises that proper notice was given. The presumption is not conclusive, and may be rebutted by a declaration or other evidence indicating that notice was not received. Recently, in *Enron,* this court found that an affidavit from the importer's recordkeeper, stating that an extension notice had not been received, was sufficient to rebut the presumption and defeat summary judgment. 15 CIT at ——, Slip op. 91–91 at 9–10. No such evidence was produced in this case. International makes the naked assertion in its "Statement to Accompany Motion for Sum-

mary Judgment" that Customs failed to give notice. International did not provide any evidence to support its assertion, nor did it submit an opposition to the government's motion for summary judgment. As International has failed to rebut the presumption that notice was given, the only issue to be decided is whether the extension was permissible under the statute.

■■■ Customs claims the extension was necessary because the Los Angeles district needed information from Headquarters in order to classify the disk drives.[6] The question, therefore, is whether these circumstances fall within 19 U.S.C. § 1504(b)(1), which permits an extension when "information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer." 19 U.S.C. § 1504(b)(1); see 19 C.F.R. § 159.12(a)(1)(i). The "appropriate" customs officer is the officer making the decision to liquidate—in this case, the Los Angeles district director.

The scope of § 1504(b)(1) was considered in *Detroit Zoological Society v. United States*, 10 CIT 133, 630 F.Supp. 1350 (1986). In *Detroit Zoo*, the issue was whether an extension was justified under § 1504(b)(1) when the plaintiff requested that Customs seek internal advice on classification of an entry. *See id.* at 138, 630 F.Supp. at 1356. The court found the extension was proper under the statute, and held:

> The term "information," as it is used in the statute, 19 U.S.C. § 1504(b)(1) (1982), ... should be construed to include **whatever is reasonably necessary for proper appraisement or classification of the merchandise involved.** When a request for internal advice of a classification decision is granted, the "information" required to make the appropriate classifica-

tion includes that advice. An extension of liquidation is thus justified in such a case if additional time is needed to obtain the internal advice and to consider it before making the classification decision. 10 CIT at 138, 630 F.Supp. at 1356–57 (emphasis added).

The language in *Detroit Zoo* that—"information ... include[s] whatever is reasonably necessary for proper appraisement or classification"—is broad enough to cover the situation in this case. Nevertheless, the facts in *Detroit Zoo* are not precisely on point, because in *Detroit Zoo*, the delay was initiated by the importer, whereas in this case, Customs initiated the delay. The distinction is not meaningful under the statute, however. The statute permits an extension when "information" is needed: the statute does not specify the source of the information, nor does it require that the importer, as opposed to the "appropriate" Customs officer, initiate the delay.[7]

■■■ International argues that the extension was unjustified under § 1504(b)(1) because classification was purely a question of law—whether the disks should be considered part of data-processing units or as stand-alone devices. Taken to its logical conclusion, International's argument would prevent Customs from extending liquidation in any case where internal information was required prior to liquidation. Such a result finds no support in the statute, and would thwart Customs in the responsible performance of its duties. Based on the plain language of the statute, therefore, Customs may legitimately extend the time to liquidate when internal information is reasonably needed to classify or appraise merchandise.

■■■ *Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560 (Fed.

---

6. After liquidation of data-processing peripheral devices resumed on March 18, 1988, the Los Angeles district director requested information from the importer. This request is not the claimed basis for the extension because it was made after the extension notice was mailed, although there may have been a general concern at the time the extension was granted that more information might be needed from the importer depending on Headquarter's formulation.

7. International cites *Pagoda Trading Co. v. United States*, 9 CIT 407, 617 F.Supp. 96 (1985), *aff'd*, 804 F.2d 665 (Fed.Cir.1986) for the proposition that the extension was improper. The case is inapposite. *Pagoda*, 9 CIT at 411, 617 F.Supp. at 100 (extension notices issued *after* countervailing duty order revoked and *after* Customs ordered to proceed with liquidation; extension notice improper).

Cir.1984), is instructive. In that case, the Federal Circuit considered whether Customs could extend liquidation under § 1504 on the grounds that the International Trade Administration ("ITA") was conducting the annual review required by statute of outstanding countervailing duty orders.[8] The ITA found that liquidation was properly extended under § 1504(b)(2), which permits suspension "if required by statute"; ultimately, ITA's decision was upheld by the Federal Circuit. *See* 748 F.2d at 1563, 1565. In reaching its decision, the Federal Circuit suggested that an extension may also have been proper under § 1504(b)(1) because information from ITA concerning subsidies was necessary before liquidation could occur. The court stated:

> If the Customs officers need more information for the proper appraisement or classification of merchandise, they may suspend. Information as to subsidies is not either appraisement or classification, exactly, but if information is equally necessary, it is an anomaly if the right to suspend to obtain it is denied. Liability to countervailing duties could well be considered an item of "classification."

*Ambassador*, 748 F.2d at 1563. The implication of this language is that § 1504(b)(1) should be construed sufficiently broadly for Customs to perform its obligations in a competent manner. Thus, liquidation may be extended when the delay is motivated by the legitimate need for additional information from within the government. It must be emphasized, however, that although Customs may as a matter of law extend the time to liquidate in order to obtain internal information, its actions will be reviewed for abuse of discretion.[9]

Even if an extension is allowed under the statute, it may be granted only for a reasonable period of time relative to the situation. *Detroit Zoo*, 10 CIT at 138, 630 F.Supp. at 1357. In this case, however, International has not argued that the *length* of the extension was unreasonable at the outset, and it is unclear from the motion papers whether Customs originally extended the time by less than the maximum one year permitted by the regulations. *See* 19 C.F.R. § 159.12(a). Here, notices extending liquidation of the entry were mailed on February 9, 1988; general liquidation of the product was resumed on March 18, 1988. On June 20, 1988, Customs requested data from the importer. It is quite possible that, had the importer responded, liquidation would have occurred within the original one-year period. The entry was liquidated on October 21, 1988, nineteen days after the anniversary date of the entry, which would tend to support Custom's view that it was acting in a reasonably expeditious manner.[10] International has not met its burden of showing abuse of discretion on this point.

In this case, where Customs has demonstrated that classification of disk drives was under review, and the Los Angeles

8. *Ambassador* involved merchandise from India that was entered or withdrawn from warehouses in the United States in 1980. In 1979, the Treasury Department determined that India had subsidized the merchandise prior to export, and imposed countervailing duties. Liquidations were suspended. In 1980, in accordance with its statutory mandate, 19 U.S.C. § 1675(a), ITA announced it would review all outstanding countervailing duty orders. ITA directed Customs to maintain the suspension of liquidation. In 1982, ITA published the results of its review, and ordered Customs to make assessments and final liquidations. ITA reasoned that since the statutory scheme required retroactive assessments, suspension of liquidation had been justified under 19 U.S.C. § 1504(b)(2). The Federal Circuit found ITA's interpretation reasonable.

9. The result is not at odds with legislative intent. The intent of the statute is to eliminate uncertainty in customs transactions; as long as proper notice is given and Customs does not abuse its discretion by extending the time without cause, the statute is not undermined. This court notes the statement in *Enron*, however, that "mechanized mailing of tens of thousands of notices of extensions each week would seem to flout both the letter and spirit of the statute." Slip Op. 91–91 at 9. This case is distinguished from the situation described in *Enron* because Customs has demonstrated meaningful particularized decision-making combined with proper notice, and its claim has not been rebutted.

10. While the extension was granted substantially in advance of the original deadline, nothing in the record indicates that the appropriate Customs official should have anticipated a sufficiently swift Headquarter's resolution and sufficiently prompt gathering of any needed data so as to meet the original deadline.

district director was unable to classify without guidance from Headquarters, and International has failed to demonstrate that the extension was excessive or improvidently granted for other reasons, the decision to extend the time is found proper under § 1504(b)(1) and not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgement is granted, and plaintiff's motion for summary judgment is denied.