**ST. PAUL FIRE & MARINE INSURANCE COMPANY (SURETY FOR CARREON, INC.), Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 88–02–00094.**

United States Court of International Trade.

Aug. 3, 1992.

---

Glad & Ferguson, T. Randolph Ferguson and John M. Daley, San Francisco, Cal., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Washington, D.C., Pamela G. Larrabee, Governors Island, N.Y., for defendant.

## MEMORANDUM OPINION AND ORDER

GOLDBERG, Judge:

Plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul") brought this

action pursuant to 28 U.S.C. § 1581(a) (1988) challenging the denial by the United States Customs Service ("Customs") of its protest regarding the liquidation of forty-one entries of merchandise. St. Paul contends that the merchandise was liquidated by operation of law at the rate of duty claimed by the importer at the time of entry because Customs improperly extended the time for liquidation of the entries. Defendant asserts that it properly extended the time for liquidation of the forty-one entries, and that duties were appropriately assessed. The case is before the court on cross motions for summary judgment.

### Background

Plaintiff is the surety for Carreon Management Services, Inc. ("Carreon"), which made forty-one entries of merchandise at El Paso, Texas between July 14, 1981 and August 24, 1982. Carreon claimed duty-free treatment for the merchandise under Item 807.00, of the Tariff Schedules of the United States ("TSUS").

Item 807.00 provides duty-free treatment for imports of articles assembled abroad with components produced in the United States. Classification of merchandise under Item 807.00 is conditioned upon the importer's submission to Customs of detailed documentation including invoices, certificates of origin, foreign assemblers' declarations, and actual cost data.

Carreon failed to file, at the time of entry, or at any time thereafter, actual cost data and certificates of origin required by Customs to support its claim for duty-free treatment under Item 807.00, TSUS.

Customs extended the time for liquidation under 19 U.S.C. § 1504(b)(1) (1988) for the forty-one entries [1] because it was awaiting receipt of the required information from Carreon. Customs issued three one-year extensions for merchandise entered before February 1983, and two one-year extensions for merchandise entered thereafter. [2]

On April 5, 1984, and again on October 10, 1984, Customs issued a Request for Information (Form CF 28) to Carreon seeking the required missing data. Carreon failed to respond to both requests.

On January 4, 1985, Customs liquidated the forty-one entries. Customs denied Carreon's claim for duty-free treatment under Item 807.00, TSUS, and assessed duties. On March 3, 1985, Customs issued a demand for payment to St. Paul for the duties. At that time, St. Paul discovered that Carreon had discontinued business and would not pay the duties due Customs. St. Paul filed a protest on May 8, 1985 contesting the validity of the liquidations and the extensions for the time to liquidate. On August 20, 1987, Customs denied the protest, and St. Paul paid Customs $273,994.44, the duties due on Carreon's entries. St. Paul filed a summons with the court on February 10, 1988, and a complaint on March 28, 1988. Both St. Paul and the government move for summary judgment.

### Discussion

1. Standard of Review

■ Decisions by Customs to extend the period in which to liquidate entries are subject to judicial review. *International Cargo & Surety Ins. Co. v. United States,* 15 CIT ——, 779 F.Supp. 174, 176 (1991); *Detroit Zoological Soc'y v. United States,* 10 CIT 133, 137–138, 630 F.Supp. 1350, 1356 (1986); *Pagoda Trading Co. v. United States,* 9 CIT 407, 411, 617 F.Supp. 96, 99–100 (1985), *aff'd,* 5 Fed.Cir. (T) 10, 804 F.2d 665 (1986); and *Bar Bea Truck Leasing Co. v. United States,* 4 CIT 138, 140 (1982) (quoting *People v. United States Dep't of Agric.,* 427 F.2d 561, 567 (D.C.Cir. 1970)). These decisions will be upheld if they are proper under the statute, and are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *International Cargo,* 15 CIT at ——, 779 F.Supp. at 176; *Detroit Zoological,* 10 CIT at 137–138, 630 F.Supp. at 1356.

---

**1.** St. Paul contends that Customs extended the time for liquidation for only thirty-one of the forty-one entries.

**2.** See Appendix for schedule of dates of entry, extensions, and liquidation.

■ Summary judgment is appropriate only where the pleadings and other documents on file demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The party opposing summary judgment may not rest on its pleadings, but must respond with specific facts showing the existence of a genuine issue for trial. *See International Cargo*, 15 CIT at ——, 779 F.Supp. at 176; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*citing* Fed.R.Civ.P. 56(e)); *United States v. Pent–R–Books, Inc.*, 538 F.2d 519 (2nd Cir.1976), *cert. den.*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); and *Stevens v. Barnard*, 512 F.2d 876 (10th Cir.1975). In ruling on cross-motions for summary judgment, if the court determines that no genuine issues of material fact exist, the court may properly grant summary judgment in favor of the movant who is "entitled to judgment as a matter of law." *Texas Apparel Co. v. United States*, 12 CIT 1002, 1004, 698 F.Supp. 932, 934 (1988), *aff'd per curium*, —— Fed.Cir. (T) ——, 883 F.2d 66 (1989), *cert. den.*, 493 U.S. 1024, 110 S.Ct. 728, 107 L.Ed.2d 747 (1990) (quoting USCIT R. 56(d)).

## 2. Statutory Limitations on Liquidation

■ Subsection (a) of 19 U.S.C. § 1504 provides that:

Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:

(1) the date of entry of such merchandise;

. . . . .

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer of record.

19 U.S.C. § 1504(a) (1988).

Subsection (b) of § 1504 permits Customs to extend the period in which to liquidate an entry if:

(1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer;

(2) liquidation is suspended as required by statute or court order; or

(3) the importer of record requests such extension and shows good cause therefor.

19 U.S.C. § 1504(b)(1) (1988).

Customs may only grant three extensions and no extension may exceed one year. 19 C.F.R. § 159.12(a) & (e) (1991).[3] Therefore, the period for liquidation of merchandise cannot exceed four years from the date of entry.

Prior to 1978, "Customs could delay liquidation as long as it pleased, with or without giving notice." *International Cargo*, 15 CIT at ——, 779 F.Supp. at 177; *see also* S.Rep. No. 95–778, 95th Cong., 2d Sess. 32 (1978), *reprinted in*, 1978 U.S.C.C.A.N. 2211, 2242. Congress enacted Section 1504 in 1978 to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." S.Rep. No. 95–778, 95th Cong., 2d Sess. 32 (1978), *reprinted in*, 1978 U.S.C.C.A.N. at 2243. Congress specifically noted that by the passage of Section 1504, "[s]ureties would ... be better protected against losses resulting from the dissolution of their principals in instances where there has been undue delay in liqui-

---

**3.** 19 C.F.R. § 159.12(a) & (e) provide in pertinent part:
  (a) *Reasons*—(1) *Extension.* The district director may extend the 1-year statutory period for liquidation for an additional period not to exceed 1 year ...

. . . . .

  (e) *Limitation on extensions.* The total time for which extensions may be granted by the district director may not exceed 3 years.

dating entries." S.Rep. No. 95–778, 95th Cong., 2d Sess. 32 (1978), *reprinted in,* 1978 U.S.C.C.A.N. at 2243.

3. Extension of Liquidation

Plaintiff claims that Customs' extensions of the time for liquidation were unjustified on two grounds. First, St. Paul argues that Customs had no valid basis to extend liquidation for insufficient information under § 1504(b)(1) beyond the second anniversary date of each entry. Specifically, plaintiff maintains that Customs had all the *information* it needed to properly classify the merchandise, i.e., to deny the claimed Item 807.00 classification, by the second anniversary date of each entry. Second, St. Paul contends that the total length of time of the extensions for each entry, which ranged from thirteen to twenty-nine months, was unreasonable under the circumstances.[4] Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment on the Complaint or, in the Alternative, for Summary Adjudication as to Ten Entries at 1–2.

Defendant responds that Customs made a determination that Item 807.00, TSUS, was the proper classification for the merchandise, that it extended liquidation to obtain information needed to liquidate the entry according to its correct classification, and that the court should defer to Customs' determination. Additionally, defendant contends that the second and third extensions of liquidation were proper because Customs found it more efficient to give the importer "the benefit of the doubt" until it had cause to determine that the required information would not be forthcoming. Defendant's Memorandum in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment at 17.

The court addressed the issue of whether an extension for insufficient information under Section 1504(b)(1) was justified in

*Detroit Zoological,* 10 CIT 133, 630 F.Supp. 1350. There, the court held that the term "information," as used in § 1504(b)(1), "should be construed to include whatever is reasonably necessary for proper appraisement or classification of the merchandise involved." 10 CIT at 138, 630 F.Supp. at 1356. Specifically, the court held "information" to include internal Customs advice requested by the importer.

■ Subsequently, in *International Cargo,* the court interpreted the term "information" to include internal information sought by Customs. 15 CIT at ——, 779 F.Supp. at 178. These interpretations of the term "information" in *Detroit Zoological* and *International Cargo* are sufficiently broad to cover the information Customs requested in the case at bar, namely cost data and country of origin information to support Carreon's claim under Item 807.-00.

■ In *Detroit Zoological,* the court also addressed the issue of whether the length of an extension by Customs was reasonable. It held that the court should ordinarily "defer to Customs' determination that it needs additional information to liquidate an entry and therefore requires an extension of the statutory period." 10 CIT at 138, 630 F.Supp. at 1357. However, the extension period granted must be "for a **reasonable period of time relative to the situation,**" and it cannot be **"so great as to constitute an abuse of discretion."** *Id.,* 10 CIT at 138–139, 630 F.Supp at 1357 (emphasis added). Based upon that reasoning, this court concludes that the number of one-year extensions granted by Customs, i.e., the total extension period, also must be reasonable in light of the circumstances.

■ In this case, Carreon's entry papers indicated that the merchandise would qualify for duty-free treatment under Item 807.-00, TSUS. Customs had cause to expect Carreon to file the required supporting doc-

---

**4.** St. Paul has also argued, in the alternative, that Customs failed to issue first extensions for seven entries and second extensions for three entries, and that these entries were therefore deemed liquidated at the rate of duty assessed at the time of entry. Customs claims that exten-

sions were issued on these entries, but that the computer records reflecting the issuance of the extensions were lost. The court need not determine here whether the extensions were actually issued since it grants St. Paul's requested relief on other grounds.

umentation for classification under Item 807.00, TSUS. Customs acted reasonably in preliminarily finding that the *proper* classification of the merchandise was under Item 807.00, TSUS. Yet, Customs could not liquidate the entries because it lacked "information" reasonably necessary to liquidate those entries under the *proper* classification. Therefore, the court finds that Customs was justified in granting the first one-year extensions of time to liquidate the merchandise to provide Carreon an opportunity to submit the supporting documentation.

■ Determining whether the total length of the extensions was proper requires an inquiry into its reasonableness in light of the circumstances. In this case, the importer made entries from July 1981 until August 1982, claiming classification of the merchandise under Item 807.00, TSUS. This classification is dependent upon the importer's submission to Customs of supporting documentation including certificates of origin and actual cost data. Carreon did not file actual cost data or certificates of origin at the time of entry.

Customs' regulation regarding the time period within which the importer must file actual cost data states:

> Actual cost data must be submitted **as soon as accounting procedures permit.** To insure that information used for Customs purposes is reasonably current, the importer shall ordinarily be required to furnish updated cost and assembly data **at least every six months,** regardless of whether he considers that significant changes have occurred. The 6–month period for the submission of updated cost or other data may be extended by the district director if such extension is appropriate for the type of merchandise involved, or because of the accounting period normally used in the trade, or because of other relevant circumstances.

19 C.F.R. § 10.21 (1991) (emphasis added).

Under the circumstances presented, Customs and Carreon *agreed* that Carreon

"was required to submit cost submissions to the district director at the relevant port at six month intervals, and actual cost data was required to be submitted on a Customs Form 247 no later than 60 days after the close of the importer's fiscal year." Defendant's Response to Plaintiff's First Interrogatories, Response to Interrogatory No. 1.A.; *see also* Reply Brief in Response to Plaintiff's Opposition to Defendant's Cross Motion for Summary Judgment at 4; Plaintiff's Reply to Defendants' Opposition to Motion for Summary Judgment and Response to Cross–Motion for Summary Judgment at 6; and Customs' Deposition, Exhibit 6, Section 13(h).

Applying the facts in a light most favorable to defendant by assuming that Carreon's fiscal year began on the date of its first entry, July 14, 1981, Customs expected Carreon to submit the actual cost data by no later than mid-September 1982. Based on the agreement between Carreon and Customs, it was reasonable for Customs to expect Carreon to furnish updated cost data at least every six months. Despite the guidelines set forth in Customs' regulation and the terms of Carreon's agreement with Customs, Carreon failed to submit the actual cost data or any updated data in 1982.

The court has held that Customs reasonably granted first extensions of the liquidation period in 1982 for the 1981 entries,[5] and in 1983 for the 1982 entries. The issue therefore, is whether, in light of the circumstances, Customs reasonably granted second extensions of the liquidation period in 1983 for the 1981 entries[6] and a similar extension in 1984 for the 1982 entries. And finally, whether Customs reasonably granted third extensions for the 1981 entries and some of the 1982 entries in 1984.

Customs granted these second and third extensions even though Carreon neither sent the required information nor made any effort to contact Customs regarding these entries and the missing documentation. Customs itself made no attempt to contact Carreon for the outstanding documentation

---

**5.** Customs also properly granted a first extension in December 1982 for one 1982 entry.

**6.** Customs also granted a second extension in December 1983 for one 1982 entry.

until April 5, 1984, when it finally sent Carreon a Request for Information. After receiving no response, Customs sent another Request for Information on October 10, 1984. Again, Carreon failed to respond.

Given Carreon's failure to submit documentation within two years from the date it entered the merchandise, or to even contact Customs and affirm that it would submit the data, however late, the proper classification of the merchandise no longer resided under Item 807.00, TSUS. After the first one-year extension, which expired in mid-1983 for most entries, Customs had no cause to believe that Carreon would submit the required cost data. Accordingly, the second and third extensions, issued on the statutory basis that Customs had insufficient information to properly classify the merchandise, were unreasonable and constituted an abuse of discretion.

In *Pagoda Trading*, 9 CIT at 411, 617 F.Supp. at 100, the court held that where Customs' delay of liquidation is improper, plaintiff is prejudiced as a matter of law. The court finds that the lengthy delay of liquidation in this case was improper, and that St. Paul was prejudiced as a matter of law. Thus, all forty one entries are deemed to have been liquidated by operation of law at the rate of duty claimed by Carreon at the time of entry.

### Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and defendant's cross-motion for summary judgment is denied. Customs is directed to reliquidate the subject entries as duty-free under Item 807.00, TSUS, as proposed by Carreon upon entry, and to refund to plaintiff the excess duties collected with interest as provided in 19 U.S.C. § 1520.

### APPENDIX

| Entry No. | Entry Date | First Extn. | Second Extn. | Third Extn. | Liquidation Date |
|---|---|---|---|---|---|
| 81–202155–2 | 07–14–81 | June 1982 | June 1983 | July 1984 | 01/04/85 |
| 81–202244–1 | 07–17–81 | June 1982 | June 1983 | July 1984 | 01/04/85 |
| 81–202277–1 | 07–23–81 | June 1982 | June 1983 | July 1984 | 01/04/85 |
| 81–202279–7 | 07–24–81 | June 1982 | June 1983 | July 1984 | 01/04/85 |
| 81–202312–3 | 07–30–81 | June 1982 | July 1983 | July 1984 | 01/04/85 |
| 81–202355–0 | 08–06–81 | No record | July 1983 | July 1984 | 01/04/85 |
| 81–202397–4 | 08–13–81 | No record | July 1983 | July 1984 | 01/04/85 |
| 81–202441–0 | 08–20–81 | No record | July 1983 | July 1984 | 01/04/85 |
| 81–202464–3 | 08–26–81 | No record | July 1983 | July 1984 | 01/04/85 |
| 81–202509–5 | 09–02–81 | No record | July 1983 | July 1984 | 01/04/85 |
| 81–202510–5 | 09–02–81 | No record | July 1983 | July 1984 | 01/04/85 |
| 81–202520–2 | 09–03–81 | No record | Aug. 1983 | July 1984 | 01/04/85 |
| 81–202559–0 | 09–11–81 | Aug. 1982 | Aug. 1983 | July 1984 | 01/04/85 |
| 81–202598–5 | 09–18–81 | Aug. 1982 | Aug. 1983 | July 1984 | 01/04/85 |
| 81–202627–2 | 09–24–81 | Aug. 1982 | Aug. 1983 | July 1984 | 01/04/85 |
| 82–200041–1 | 10–09–81 | Sept. 1982 | Sept. 1984 | July 1984 | 01/04/85 |
| 82–200091–6 | 10–22–81 | Sept. 1982 | Sept. 1983 | July 1984 | 01/04/85 |
| 82–200161–4 | 11–05–81 | Sept. 1982 | Oct. 1983 | Sep. 1984 | 01/04/85 |
| 82–200206–6 | 11–16–81 | Oct. 1982 | Oct. 1983 | Sep. 1984 | 01/04/85 |
| 82–200264–2 | 11–30–81 | Oct. 1982 | Oct. 1983 | Sep. 1984 | 01/04/85 |
| 82–200474–7 | 02–03–82 | Dec. 1982 | Dec. 1983 | Feb. 1984 | 01/04/85 |
| 82–200491–2 | 02–08–82 | Jan. 1983 | Jan. 1984 | Nov. 1984 | 01/04/85 |
| 82–200517–3 | 02–12–82 | Jan. 1983 | Jan. 1984 | Nov. 1984 | 01/04/85 |
| 82–200522–5 | 02–16–82 | Jan. 1983 | Jan. 1984 | Nov. 1984 | 01/04/85 |
| 82–200534–8 | 02–19–82 | Jan. 1983 | No record | Nov. 1984 | 01/04/85 |
| 82–200716–8 | 03–24–82 | Feb. 1983 | No record | Not applicable | 01/04/85 |
| 82–200818–3 | 04–07–82 | March 1983 | No record | Not applicable | 01/04/85 |
| 82–201412–2 | 07–14–82 | June 1983 | July 1984 | Not applicable | 01/04/85 |
| 82–201454–6 | 07–21–82 | June 1983 | July 1984 | Not applicable | 01/04/85 |
| 82–201462–7 | 07–23–82 | June 1983 | July 1984 | Not applicable | 01/04/85 |
| 82–201492–8 | 07–28–82 | June 1983 | July 1984 | Not applicable | 01/04/85 |
| 82–201546–4 | 08–05–82 | July 1983 | July 1984 | Not applicable | 01/04/85 |
| 82–201566–8 | 08–06–82 | July 1983 | July 1984 | Not applicable | 01/04/85 |
| 82–201592–0 | 08–10–82 | July 1983 | July 1984 | Not applicable | 01/04/85 |
| 82–201622–7 | 08–13–82 | July 1983 | July 1984 | Not applicable | 01/04/85 |
| 82–201644–7 | 08–17–82 | July 1983 | July 1984 | Not applicable | 01/04/85 |

| Entry No. | Entry Date | First Extn. | Second Extn. | Third Extn. | Liquidation Date |
|---|---|---|---|---|---|
| 82–201665–4 | 08–19–82 | July 1983 | July 1984 | Not applicable | 01/04/85 |
| 82–201693–9 | 08–24–82 | July 1983 | July 1984 | Not applicable | 01/04/85 |
| 83–101243–2 | 11–09–82 | Oct. 1983 | Sept. 1984 | Not applicable | 01/04/85 |
| 83–101299–5 | 11–12–82 | Oct. 1983 | Sept. 1984 | Not applicable | 01/04/85 |
| 83–101390–7 | 11–24–82 | Oct. 1983 | Sept. 1984 | Not applicable | 01/04/85 |