Slip Op. 01-50
United States Court of International Trade

```
+------------------------------+
|                              |
| PROSEGUR, INC.,              |
|                              |
|               Plaintiff,     |
|                              |
|          v.                  |
|                              |
| UNITED STATES,               |
|                              |
|               Defendant.     |
|                              |
+------------------------------+
```

Before: Pogue, Judge

Consol. Court No. 94-08-00486

[Defendant's motion for summary judgment granted.]

Decided: April 18, 2001

<u>Peter S. Herrick</u>, for Plaintiff.

<u>Stuart E. Schiffer</u>, Acting Assistant Attorney General, <u>Joseph I. Liebman</u>, Attorney-in-Charge, International Trade Field Office, <u>John J. Mahon</u>, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; and <u>Yelena Slepak</u>, Office of Assistant Chief Counsel, International Trade Litigation, U. S. Customs Service, Of Counsel, for Defendant.

**OPINION**

**Pogue, Judge**: Plaintiff, Prosegur, Inc. ("Prosegur"), challenges the refusal of the United States Customs Service ("Customs") to reliquidate certain jewelry entered at the port of Miami, Florida.[1] Prosegur contends that the imported merchandise should have been

---

[1]This action, Consolidated Court No. 94-08-00486, includes Court No. 95-10-01305. Defendant's summary judgment requests the severance and dismissal of only part of the action, Court No. 95-10-01305.

classified under subheading 9801.00.10,[2] Harmonized Tariff Schedule of the United States ("HTSUS"), free of duty, rather than under subheading 7113.19,[3] HTSUS. Merchandise classified under subheading 7113.19, HTSUS, is dutiable at 6.5% ad valorem. Pursuant to USCIT Rule 56, Customs requests dismissal of Court No. 95-10-01305 for lack of jurisdiction and/or failure to state a claim on which relief could be granted. Prosegur opposes the motion, claiming that factual disputes preclude the grant of summary judgment.

### Background

On April 3, 1992, Prosegur imported jewelry under entry number 459-0101159-8. Prosegur attached a "Declaration for Free Entry of Returned American Products" to the entry form. Nonetheless, Customs liquidated the goods on August 13, 1993, under subheading 7113.19, HTSUS, assessing a duty of 6.5% ad valorem.

In a letter dated March 18, 1994, Prosegur notified Customs that, according to Prosegur, Customs did not properly liquidate the goods. Customs treated the letter as a "protest," and denied it as untimely as it was filed more than ninety days after the August

---

[2]Subheading 9801.00.10 refers to, "Products of the United States when returned after having been exported without having been advanced in value or improved in condition by any process of manufacture or other means while abroad." 9801.00.10, HTSUS.

[3]Subheading 7113.19 refers to, "Articles of jewelry and parts thereof, of precious metals or of metal clad with precious metals." 7113.19, HTSUS.

13th liquidation.  See 19 U.S.C. §§ 1514(a), (c).[4]  Pursuant to 19

U.S.C.  §  1520(c)(1),  Prosegur  then  filed  a  claim  for

reliquidation.[5]

---

[4]19 U.S.C. § 1514(a) states, in relevant part:

(a)  Finality of decisions; return of papers
. . .
[D]ecisions of the appropriate customs officer,
including the legality of all orders and findings
entering into the same, as to –
. . .
(2) the classification and rate and amount of
duties chargeable;
. . .
(5) the liquidation or reliquidation of an
entry, or any modification thereof;
. . .
shall be final and conclusive upon all persons . .
. unless a protest is filed in accordance with this
section . . . .

19 U.S.C.  § 1514(a)(1988).

According  to  19  U.S.C.  §  1514(c)(2),  "[a]  protest  of  a
decision,  order,  or  finding  described  in  subsection  (a)  of  this
section shall be filed with such Customs officer within ninety days
after but not before – (A) notice of liquidation or reliquidation
. . . ."  19 U.S.C. § 1514(c)(2)(1988)(redesignated 1514(c)(3) in
1993).

[5]19 U.S.C. § 1520(c)(1) states:

Notwithstanding a valid protest was not filed, the
appropriate customs officer may, in accordance with
regulations prescribed by the Secretary, reliquidate
an entry or reconciliation to correct –

(1) a clerical error, mistake of fact, or other
inadvertence not amounting to an error in the
construction of a law, adverse to the importer
and manifest from the record or established by
documentary evidence, in any entry, liquidation,
or other customs transaction, when the error,
mistake,  or  inadvertence  is  brought  to  the

Prosegur appears to make two arguments; first, that Customs did not act to extend the period of liquidation. As a result, Prosegur argues that the imported goods were deemed liquidated by law one year after their entry at the rate asserted at the time of entry, in this case duty free. See 19 U.S.C. § 1504(a).[6] Prosegur also appears to argue that Customs, through a mistake of fact, misclassified the goods as dutiable, rather than duty free, as supported by Prosegur's declaration of the duty free nature of the goods.

Customs, on the other hand, argues that it extended the period of liquidation twice. It also claims that Prosegur was notified, prior to liquidation, that the information on the duty free nature of the goods was incomplete. As a result, Customs contends that it

---

attention of the appropriate customs officer within one year after the date of liquidation or exaction . . . .

19 U.S.C. § 1520(c)(1)(1988).

[6]Prosegur relies on section 1504(a)("Liquidation"), which states, in relevant part:

(a) Liquidation

Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:

(1) the date of entry of such merchandise;
 . . .
shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer of record.

 19 U.S.C. § 1504(a)(1988)(sections (2) and (3) omitted).

properly extended the liquidation period, and that it did not commit a mistake of fact by classifying the goods as dutiable. Rather, according to Customs, it considered two available options -- classifying the goods as American Goods Returned; or denying that classification and choosing instead subheading 7113.19 because of insufficient documentation -- and chose the classification it found more appropriate.  In Customs' view, the appropriate manner of  contesting the classification was for Prosegur to file a valid protest under 19 U.S.C. § 1514(a), which Prosegur failed to do.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  USCIT Rule 56.  A dispute is genuine "if the evidence is such that [the trier of fact] could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The court resolves any doubt over material factual issues in favor of the nonmoving party, and draws all reasonable inferences in its favor. See Anderson, 477 U.S. at 255; Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). Nevertheless, "[w]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere

allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  USCIT Rule 56(e).

There are two issues in this case: (1) whether Prosegur makes the minimum showing that Customs did not extend the period of liquidation, and (2) whether the criteria for relief under section 1520(c)(1) can be met.  Here, Prosegur failed to set forth any fact from which the court could infer that the liquidation period was not extended, and, therefore, did not offer evidence from which the court could rebut the presumption that Customs satisfactorily performed its duties.  In addition, if the claimed misclassification of the imported jewelry as dutiable rather than duty free was an error, it was an error in the construction of law, not a mistake of fact.  As a result, there are no genuine issues of material fact in dispute and, therefore, summary judgment is appropriate.

## Discussion

**A.    Customs Properly Extended the Period of Liquidation**

    **1.    Notice of Extension of Liquidation**

Unless Customs extends the period of liquidation,[7] imported

---

[7]Liquidation is "the final computation or ascertainment of the duties or drawback accruing on an entry."  19 CFR 159.1 (1994).  It is intended to be the final determination of all issues relating to the admissibility and dutiability of goods.  See United States v. Utex Int'l, Inc., 857 F.2d 1408, 1409 (Fed. Cir. 1988).

merchandise is to be liquidated within one year of its entry date. Otherwise, the imported goods are deemed liquidated at the rate asserted by the importer of record at the time of entry.  See 19 U.S.C. § 1504(a).  Customs extends the time within which it may liquidate goods by giving notice to the importer of record in accordance with section 1504(b).  Customs may only extend the period of liquidation under three specific circumstances, including when "information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer."  19 U.S.C. § 1504(b)(1).[8]

Prosegur argues that Customs never extended the liquidation period.  Consequently, according to Prosegur, the goods were deemed liquidated by law on  April 3, 1993, one year after the goods were entered into the United States, as duty free, the rate Prosegur asserted at the time of entry.  Prosegur rests its argument entirely on information it received from Customs, pursuant to the Freedom of Information Act ("FOIA"). Prosegur requested copies of the entry summary, commercial invoices, packing lists, Customs Forms ("CF") 28 and 29,[9] and all other documents pertaining to the

---

[8]The other two circumstances under which Customs can extend the period of liquidation -- when "liquidation is suspended as required by statute or court order" and when "the importer of record requests such extension and shows good cause therefore" – are not at issue here.  19 U.S.C. § 1504(b)(2)-(3).

[9]CF 28 is used by the district director to notify the importer if the entered rate or value of the merchandise is too low, specifying the difference in value on the notice.  CF 29 is a notice of action that alerts the importer of a proposed change to the classification.

imported merchandise at issue.  See Letter from Peter S. Herrick, at Pl.'s Mem. Opp'n to Mot. Summ. J., Composite Ex. A.  Customs responded to Prosegur's FOIA request, but did not send a copy of the electronic history file, which contains records of extension notices, CF 28s and 29s. Prosegur argues that the court should infer from the lack of a copy of the electronic history file that the extension notices were never mailed.

Customs officials are "entitled to a presumption that their duties are performed in the manner required by law."  International Cargo & Sur. Ins. Co. v. United States, 15 CIT 541, 544, 779 F. Supp. 174, 177 (1991).  In this case, the presumption arises that Customs sent notices extending the period of liquidation to the importer, Prosegur.  This presumption can be "rebutted by a declaration or other evidence indicating that notice was not received."  Id.  Previously, "this court found that an affidavit from the importer's recordkeeper, stating that an extension notice had not been received, was sufficient to rebut the presumption." Id. (referring to Enron Oil Trading & Transp. Co. v. United States, 15 CIT 511, 516 (1991)).  A mere "naked assertion," however, that the notice was not received does not rebut the presumption.  Id. at 544-45, 779 F. Supp. at 177-78.

Defendant United States submitted affidavits from customs officials, a copy of the electronic history file containing the notices of extension, and a copy of the CF 29 sent to Prosegur. Arthur Versich, Project Leader of the Entry Processing Team, in his

affidavit, described Customs' computerized database, the Automated Commercial System ("ACS"), used to generate extension notices. Versich explained that, due to the volume of extension and suspension notices, Customs does not maintain paper copies of notices sent to importers. See Affidavit of Arthur Versich ¶ 5, at Def.'s Mem. Supp. Mot. Summ. J., Collective Ex. A. Rather, the information is stored in a computer file, known as the extension/suspension history file. Id.

Roger Odom, team leader in the Production Management Section of the Computer Operations Division of the Office of Information and Technology, described in his affidavit the process used to format, print, and send the extension notices. According to Odom, the computer and printing rooms are manned and operated twenty-four hours a day, seven days a week, and are closely supervised. See Affidavit of Roger Odom ¶ 4, at Def.'s Mem. Supp. Mot. Summ. J., Collective Ex. A. Customs runs a group of programs each week, after the end of the work week. These programs are known as "end-of-week" programs. Extension notices are one such end-of-week process. Every Sunday, extension notices, or CF 4333As, are printed. See id. at ¶ 5. The printed CF 4333As are then brought to the Reports Distribution area. See id. at ¶ 8. After a final check for defects, the notices are placed in Postal Service trays. See id. at ¶ 10. Within twenty-four hours of printing, the notices are then delivered to the post office.

The printing and mailing of the extension notices are

operations that the data center "must perform every week." Id. at ¶ 11 (emphasis in original). Therefore, "there is no doubt that where Customs has a record of a notice, the notice was printed at or about the time indicated by the run data." Affidavit of Arthur Versich ¶ 16, at Def.'s Mem. Supp. Mot. Summ. J., Collective Ex. A.

Here, Customs' automated system records indicate that notices were sent to Prosegur. Id. at ¶ 7. Specifically, two extension notices are listed in Prosegur's file, dated January 16, 1993, and July 17, 1993. See Print-out of History File, at Def.'s Mem. Supp. Mot. Summ. J., Collective Ex. A. These notices would have extended the period of liquidation to include the August liquidation data at issue.

Prosegur does not even make a "naked assertion" that the notices of extension were not received. Prosegur submits no statement or affidavit, e.g., of recordkeepers, that could raise an inference that it never received the notices. Rather, Prosegur asks the court to infer from an incomplete file obtained through a FOIA request, made some 6 months after the liquidation of the goods, that the extension notices were not sent.

Whatever the reasons why the history file was not included in the set of documents requested by Prosegur,[10] the court cannot infer

---

[10]For example, as argued by Customs, the official in charge of gathering the documents pursuant to Prosegur's FOIA request may not have conducted a thorough review of the file for the merchandise at issue. See Def.'s Reply Mem. Supp. Mot. Summ. J. at 6.

from the failure to include the history file in the FOIA response, without any more evidence presented by Prosegur, that the extension notices and customs forms were never sent. See St. Paul Fire & Marine Ins. Co. v. United States, 21 CIT 953, 955 (1997)(quoting Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988)(noting that to survive summary judgment "a nonmovant must do more than merely raise some doubt as to the existence of a fact; evidence must be forthcoming from the nonmovant . . . ")). The FOIA response simply does not provide a basis for such an inference.

Customs' history file indicates that two notices of extension were sent. The routine office practice of mailing notices of extension within one week after the notices are generated, in the absence of any evidence that Prosegur never received its notices, is sufficient evidence of mailing in this case. Nothing in the affidavits submitted by Prosegur raise an inference that the notices were not sent or received. Therefore, Prosegur has failed to rebut the presumption that Customs properly produced and mailed the extension notices. Accordingly, the court finds that there is no genuine issue of material fact regarding this issue.

**2.   Validity of the Extensions**

In order to uphold Customs' decision to extend the time of liquidation, the extension must be for a reason provided within 19 U.S.C. § 1504(b), specifically here, that "information . . . for

the proper appraisement or classification of the merchandise is not available to the appropriate customs officer." 19 U.S.C. § 1504(b)(1). The decision to extend the period of liquidation will be upheld as long as it is "proper under the statute, and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." International Cargo, 15 CIT at 542, 779 F. Supp. at 176.

"Information," under the statute, is "construed to include whatever is reasonably necessary for proper appraisement or classification of the merchandise involved." Detroit Zoological Soc'y v. United States, 10 CIT 133, 138, 630 F. Supp. 1350, 1356 (1986). At the time of entry, Prosegur did not submit information on the manufacturer of the imported goods.[11] Nor does Prosegur claim to have provided this information. As such, Customs was unable to determine whether the subject merchandise was American Goods Returned. The manufacturer of the goods, in this case, was necessary to properly classify the merchandise. See Mi-Scott Int'l, Ltd. v. United States, 13 CIT 1046, 1047 (1989). Customs' extension of the time for liquidation was, therefore, justified.

---

[11]In the CF 29, Customs alerted Prosegur that "[b]ased on the entry documentation submitted, including the CF 3311, you have failed to substantiate that the articles being returned are 'U.S. Goods.' You have indicated that you have no information on the manufacturer. Unless you comply with the entry requirements of section 10.1, your U.S. claim will be disallowed and the entry will be rate advanced." CF 29, at Def.'s Reply Mem. Supp. Mot. Summ. J., Ex. D (emphasis in original).

**B.   Classification of the Goods as Dutiable was a Mistake of Law**

**1.   Section 1520(c)**

Generally Customs' decisions are considered "final and conclusive upon all persons . . . unless a protest is filed in accordance with" the ninety-day period set forth in section 1514(a) and (c).  19 U.S.C. §§ 1514(a), (c).  Section 1520(c) is a limited exception to section 1514's protest procedures, used only to correct inadvertences in the filing.  See Chrysler Corp. v. United States, 24 CIT __, __, 87 F. Supp. 2d 1339, 1347-48 n.8 (2000)("[A]lthough 'Congress clearly envisioned a liberal mechanism for the correction of inadvertences under section 1520(c)(1)', § 1520(c)(1) is nevertheless a narrow exception to the rule that a Customs classification decision is final unless a protest is filed within ninety days following liquidation.")(internal citations omitted).  This section allows for reliquidation of an entry "[n]otwithstanding a valid protest was not filed," as long as reliquidation is requested within a year of liquidation.  19 U.S.C. § 1520(c); but see ITT Corp., 24 F.3d at 1387 ("Section 1520(c)(1) [is not to be used to] afford a second bite at the apple to importers who fail to challenge Customs' decision within the [ninety] day period set forth in § 1514.").   Under section 1520(c)(1), reliquidation is used to correct "a clerical error, mistake of fact, or other advertence . . . not amounting to an error in the construction of the law."  19 U.S.C. § 1520(c)(1).

Here, Prosegur argues that Customs committed a mistake of

fact.[12]  The distinction between a mistake of fact and error of law is clearly stated in our case law.  Mistakes of fact are generally defined as mistakes that "take . . . place when some fact which indeed exists is unknown, or a fact which is thought to exist, in reality does not exist."  C. J. Tower & Sons, Inc. v. United States, 336 F. Supp. 1395, 1399 (1972), aff'd, 499 F.2d 1277 (1974), see also Executone Info. Sys. v. United States, 96 F.3d 1383, 1386 (Fed. Cir. 1996).  "Mistakes of law, on the other hand, occur where the facts are known, but their legal consequences are not known or are believed to be different than they really are."  Chrysler Corp., 24 CIT at __, 87 F. Supp. 2d at 1344.

The court distinguishes between "decisional mistakes," which must be challenged under section 1514, and "ignorant mistakes," which are remediable under section 1520(c).  See, e.g., Id. at __, 87 F. Supp. 2d at 1347. "Decisional mistakes" are legal mistakes and occur when "a party makes the wrong choice between two known, alternative sets of facts."  Universal Coops., Inc. v. United States, 13 CIT 516, 518, 715 F. Supp. 1113, 1114 (1989).  In comparison, an "ignorant mistake" is one "in which a party is unaware of the existence of the correct, alternative set of facts."  Id.  In order for the goods to be reliquidated under 1520(c)(1), the alleged mistake of fact must be an ignorant mistake.

---

[12]Therefore, it is unnecessary to consider whether Customs' actions amounted to a clerical error or other inadvertence in accordance with section 1520(c)(1).

## 2.   Application of 1520(c)

Customs argues that Prosegur's submission of a claim under section 1520(c) is an attempt to circumvent a failure to file a timely protest under section 1514 of Customs' classification decision.  We agree.  See, e.g., ITT Corporation, 24 F.3d at 1387 n.4 ("We emphasize that under no circumstances may the provisions of § 1520(c)(1) be employed to excuse the failure to satisfy the requirements of § 1514.").  Prosegur disagrees with Customs' decision to classify the imported jewelry under subheading 7113.9, HTSUS, at 6.5% ad valorem.  It is well settled, however, that a challenge to the classification of merchandise is an issue of law. See Executone, 96 F.3d at 1387; AT&T Int'l v. United States, 18 CIT 721, 726, 861 F. Supp. 95, 100 (1994); Universal Coops., Inc., 13 CIT at 518, 715 F. Supp. at 1114; Occidental Oil & Gas Co. v. United States, 13 CIT 244, 247 (1989); Cavazos v. United States, 9 CIT 628, 630 (1985).

Prosegur, in an attempt to characterize the classification of the goods under subheading 7113.19, HTSUS, as a mistake of fact, argues that "Customs did not know the merchandise was American Goods Returned at the time of liquidation."  Complaint at ¶ 19. Prosegur supports this argument by claiming that, "[i]f Customs had doubts as to whether the merchandise qualified as American Goods, then the information they needed for making their classification decision could be obtained through a CF 28 or a CF 29[,]" and the record does not show that Customs ever requested such

documentation.  Pl.'s Mem. Opp'n to Mot. Part. Summ. J. at 8.

As previously discussed, the evidence supports a finding that Customs did notify Prosegur as to the deficiencies in its documents, even sending a CF 29.  See CF 29, at Def.'s Reply Mem. Supp. Mot. Summ. J., Ex. D.   Specifically, Customs informed Prosegur that its documentation did not indicate the manufacturer of the goods, making it impossible to classify the goods as American Goods Returned.  See id.  Prosegur has produced no evidence from which we could infer otherwise.  Moreover, Customs knew that Prosegur was attempting to enter the goods as American Goods Returned.  Nonetheless, because of Prosegur's limited documentation, Customs determined it had insufficient information to support classifying the goods as American Goods Returned.

Customs did not commit an ignorant mistake of fact, which is the case where "a party is unaware of the existence of the correct, alternative set of facts."  Chrylsler Corp., 24 CIT at __, 87 F. Supp. 2d at 1347.  Customs was aware of the alternative set of facts, i.e., Prosegur's claim that the goods were American Goods Returned.  That Customs may have been wrong with regard to the underlying fact of the place of manufacture of the goods is irrelevant because the place of manufacture was not the basis for the decision.  Rather, it was the failure of documentation that was the basis for the decision.  Customs chose not to classify the goods as American Goods Returned, but rather to classify them as dutiable, because of the inadequacy of Prosegur's documentation.

It is similarly irrelevant that Prosegur may have erred in failing to submit timely documentation of the American manufacturer. Prosegur's error was a failure to comply with CFR § 10.1, a mistake of law, not fact. As discussed in Chrysler Corporation, "although 'Customs may have been mistaken as to the correct state of the facts,' all relevant positions as to the facts were known by Customs prior to liquidation; thus creating an error in the construction of a law which cannot be challenged under § 1520(c)(1)." Chrysler Corporation, 24 CIT at __, 87 F. Supp. 2d at 1346.

In this case all relevant claims as to the facts were known by Customs prior to liquidation. Therefore, Prosegur's claimed classification was denied, not because of a mistake of fact, but because of Prosegur's failure to prove that the merchandise was American Goods Returned in compliance with 19 C.F.R. § 10.1. See, e.g., Occidental Oil, 13 CIT at 248 (holding "that since the plaintiff did not supply the proper documentation, 'the appropriate customs officer made a legal determination as to the classification of the merchandise on the basis of the facts presented, and in light of plaintiff's claimed classification.'")(quoting Cavazos, 9 CIT at 631). Customs' classification of the goods is, therefore, appropriate.

## Conclusion

For the foregoing reasons, Plaintiff's opposition to Defendant's motion for partial summary judgment is denied. Defendant's motion for partial summary judgment as to Court No. 95-10-01305 is granted.

_____
Donald C. Pogue
Judge

Dated:    April 18, 2001
          New York, New York

**ERRATUM**

Slip Op.  01-50, issued April 18, 2001

*Prosegur, Inc. v. United States*

This case involved a motion for partial summary judgment.  The judgment caption should read as follows :

[Defendant's motion for partial summary judgment as to Court No. 95-10-01305 is granted.]

April 20, 2001