**AMERICAN HI–FI INTERNATIONAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Slip Op. 96–121.
Court No. 94–01–00016.

United States Court of
International Trade.

Aug. 2, 1996.

Glad & Ferguson, San Francisco, CA (T. Randolph Ferguson and John M. Daley) for plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jeffrey M. Telep), David Ross, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Chi S. Choy, Office of the Assistant Chief Counsel, United States Customs Service, of counsel, for defendant.

## OPINION

RESTANI, Judge:

This matter is before the court on a motion for summary judgment by plaintiff American Hi–Fi International, Inc. ("American Hi–Fi") pursuant to USCIT Rule 56(a), contending that the United States Customs Service ("Customs") erroneously liquidated its entries with an assessment of interest on the underpayment of antidumping duties. The government cross-moves for summary judgment pursuant to USCIT Rule 56(b), asserting that (1) this court lacks jurisdiction to entertain this action, and (2) neither Customs nor the United States Department of Commerce ("Commerce") erred in assessing interest on plaintiff's underpayment of antidumping duties. In the alternative, defendant requests an order setting forth the facts that appear without substantial controversy pursuant to USCIT Rule 56(e).

## BACKGROUND

In 1971, when the United States Department of the Treasury ("Treasury") was responsible for administration of antidumping law, Treasury conducted a less than fair value investigation of television receivers from Japan pursuant to the Antidumping Act of 1921 ("the 1921 Act"). Treasury published its affirmative dumping finding on March 10, 1971, concluding that television receivers from Japan were being, or were likely to be, sold at less than fair value. *Television Receiving Sets, Monochrome and Color, From Japan,* 36 Fed.Reg. 4597 (Dep't Treas.1971) ("1971 Dumping Finding"). The U.S. Tariff Commission determined that an industry in the United States was being injured by reason of the importation of television receivers from Japan sold at less than fair value. *Television Receiving Sets From Japan Causing Injury,* 36 Fed.Reg. 4576 (U.S. Tariff Comm'n 1971).

The 1921 Act contained no provision for the calculation or payment of estimated antidumping duties or for the imposition of interest. It contained only a provision requiring an exporter to post a bond with sureties approved by the appropriate Customs district director in an amount equal to the estimated value of the merchandise, under regulations prescribed by Treasury. Antidumping Act of 1921, Pub.L. No. 10, § 208, 42 Stat. 9, 14 (1921).

Congress then enacted the Trade Agreements Act of 1979 ("the 1979 Act"), which repealed the 1921 Act and established new

administrative procedures for the administration of antidumping law. Trade Agreements Act of 1979, Pub.L. No. 96–36, 93 Stat. 144 (1979) (codified as amended in scattered sections of 19 U.S.C.). In 1980, Commerce replaced Treasury as the administering authority of the antidumping law. The 1979 Act provided for the payment of estimated antidumping duties upon entry of merchandise subject to dumping orders and findings and for the payment of interest upon underpayments and overpayments of amounts deposited on merchandise entered. *See* 19 U.S.C. §§ 1673e(a)(3), 1677g(a) (1988). On January 4, 1980, Treasury announced Commerce's decision that, "prior to completion of the first administrative review under [19 U.S.C. § 1675], merchandise subject to a finding of dumping in effect on January 1, 1980, may continue to be entered under bond or other security." *Antidumping; Treatment of Merchandise Subject to a Finding of Dumping in Effect on January 1, 1980,* 45 Fed. Reg. 1084 (Dep't Treas.1980). Accordingly, importers subject to Treasury's dumping findings were not required to deposit cash for estimated antidumping duties prior to the completion of the first administrative review.

In 1981, Commerce concluded its first administrative review of the 1971 Dumping Finding pursuant to 19 U.S.C. § 1675(a). *Television Receiving Sets, Monochrome and Color, From Japan,* 46 Fed.Reg. 30,163 (Dep't Comm.1981) (final results). The final results of this review established, for the first time, the cash deposit rates for estimated antidumping duties for specific manufacturers. *Id.* at 30,166. For televisions manufactured by Toshiba (those imported by plaintiff), there were no deposits required because no dumping margin was found for Toshiba. *Id.*

On June 10, 1985, Commerce published the final results of the second administrative review of the 1971 Dumping Finding. *Television Receiving Sets, Monochrome and Color, From Japan,* 50 Fed.Reg. 24,278 (Dep't Comm.1985) (final results). Again, the cash deposits were not required for televisions manufactured by Toshiba. *Id.* at 24,283. In its final results, Commerce stated:

As provided for in [19 C.F.R. § 353.48(b) ], a cash deposit of estimated antidumping duties based on the above margins shall be required for these firms [Toshiba—zero]. Since the weighted average margins for Hitachi, Nissei Sanyo, and Victor are less than 0.50 percent and, therefore, *de minimis* for cash deposit purposes, the Department shall waive the deposit requirements for shipments of television receiving sets from those firms.... These deposit requirements and waivers are effective for all shipments entered, or withdrawn from warehouse, for consumption on or after the date of publication of this notice, and shall remain in effect until publication of the final results of the next administrative review.

*Id.*

On August 16 and 18, 1986, plaintiff made two entries of television receivers manufactured by Toshiba in Japan (Consumption Entry Nos. 397–86–963482–4 and 397–86–963485–3). On receipt of plaintiff's entry papers, Customs specifically rejected Entry No. 86–963482–4 for failure to state that the entry was subject to case number A588–015–013, that is, the 1971 Dumping Finding. Customs requested an extra copy of the invoice for antidumping purposes and additional information from plaintiff about its televisions so that Customs could determine whether they were subject to antidumping duties.

On April 28, 1989, Commerce published a notice of initiation of antidumping administrative review of television receivers from Japan manufactured by Toshiba imported between March 1, 1986 and February 28, 1987. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 54 Fed. Reg. 18,320, 18,322 (Dep't Comm.1989). Commerce conducted its administrative review and published its final results on February 11, 1991. *Television Receivers, Monochrome and Color, from Japan,* 56 Fed.Reg. 5392 (Dep't Comm.1991) (final results). Commerce stated that, "[a]s a result of the comments received and the correction of certain clerical errors, we have revised our preliminary results for Fujitsu General, Hitachi, Matsushita, Mitsubishi, NEC, Sanyo, Toshi-

ba, and Victor." *Id.* at 5401. Commerce determined that televisions manufactured by Toshiba and imported between March 1, 1986 and February 28, 1987 were subject to anti-dumping duties in the amount of 35.40% *ad valorem. Id.*

Subsequently, Commerce sent liquidation instructions to Customs, which were then forwarded on July 26, 1991 to all Customs district directors, import specialists, Customs brokers, and interested parties. According to these instructions, Commerce directed Customs to liquidate entries of televisions subject to the dumping ordered entered between March 1, 1986 and February 28, 1987 and as follows:

> The assessment of antidumping duties by the Customs Service is subject to the provisions of [19 U.S.C. § 1677g], which requires *interest on overpayments or underpayments of the amount deposited as estimated antidumping duties.* The rate at which such interest is payable is the rate in effect under section 6621 of the Internal Revenue Code of 1954 for such period. Interest shall be calculated from the date of payment of estimated duties through the date of liquidation.

Liquidation Instructions, App. to Def.'s Cross–Mot. for Summ.J., Ex. 8, at 3, 7 (emphasis added). On October 11, 1991, Customs liquidated plaintiff's entries with the assessment of antidumping duties and interest. On January 6, 1992, plaintiff filed administrative protests with Customs contesting the imposition of antidumping duties and interest. Customs denied the protest.

On July 6, 1994, plaintiff filed an action challenging (1) the assessment of antidumping duties on plaintiff's entries, and (2) the assessment of interest on July 6, 1994. Plaintiff alleged jurisdiction pursuant to 28 U.S.C. § 1581(a) and alternatively, 28 U.S.C.

§ 1581(i). This court held that it had jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) and granted defendant's motion to dismiss as to Count 1, but denied it as to Count 2. *American Hi–Fi Int'l, Inc. v. United States,* Slip Op. 95–182, at 12, 1995 WL 684074 (Ct.Int'l Trade Nov. 16, 1995).

## DISCUSSION

■ Defendant contends that the court lacks jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a)[1] as Commerce, not Customs, made the contested decision to assess interest on plaintiff's underpayment of antidumping duties. Defendant argues that had plaintiff properly raised the issue to Commerce during its 1991 administrative review, jurisdiction would lie under 28 U.S.C. § 1581(c).[2] In a previous opinion denying defendant's motion to dismiss, the court discussed the respective roles of Commerce and Customs in the assessment of antidumping duties and interest on the underpayment of those duties. *See* Slip Op. 95–182, at 4–6, 1995 WL 684074. The court noted that the question of whether jurisdiction under § 1581(a) was proper turned on which agency made the contested decision. *Id.* at 7, 1995 WL 684074. The court examined plaintiff's claim and found that it had jurisdiction under § 1581(a) because Customs appeared to have made the decision to assess interest on plaintiff's bond. *Id.* at 11–12, 1995 WL 684074. The court noted that defendant "has not cited specific Commerce regulations or specific instructions from Commerce applicable to plaintiff's entries requiring cash deposits if the weighted average dumping margin is less than 0.50 percent, as was the margin for the Toshiba televisions involved in plaintiff's entries." *Id.* at 9, 1995 WL 684074. The court also stated that defendant failed to distinguish *Timken Co. v. United States,* 15 CIT 526, 777 F.Supp. 20 (1991), *aff'd,* 37 F.3d

---

1. Section 1581(a), Title 28, United States Code provides that the court, "shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]." 28 U.S.C. § 1581(a) (1988). Section 1515, Title 19, United States Code provides for review of a protest by the appropriate customs officer filed in accordance with 19 U.S.C. § 1514. 19 U.S.C. § 1515 (1988).

2. Section 1581(c), Title 28, United States Code provides that the court "shall have exclusive jurisdiction of any civil action commenced under [19 U.S.C. § 1516a]." 28 U.S.C. § 1581(c) (1988). Section 1516a, Title 19, United States Code provides for judicial review of antidumping duty determinations. *See* 19 U.S.C. § 1516a (1988).

1470 (Fed.Cir.1994), from the present case and did not respond to plaintiff's citation of Treasury Decision 85–145, which seemed to provide that Customs, in its discretion, may accept a continuous basic importation and entry bond when the amount of estimated antidumping duties are less than 5 percent *ad valorem.* Slip Op. 95–182, at 10, 1995 WL 684074. Defendant now seeks to remedy these omissions, as it may. Subject matter jurisdiction may be raised at any time.

It is undisputed that plaintiff did not make a cash deposit at the time of entry and instead posted a continuous importation and entry bond. *Id.* at 7, 1995 WL 684074. In its liquidation instructions, Commerce directed Customs to assess interest pursuant to 19 U.S.C. § 1677g, which provides that:

> Interest shall be payable on overpayments and *underpayments of amounts deposited* on merchandise entered, or withdrawn from warehouse, for consumption on and after—
>
>> (1) the date of publication of a[n] ... antidumping duty order under this subtitle or section 1303 of this title, or
>>
>> (2) the date of a finding under the Antidumping Act, 1921.

19 U.S.C. § 1677g(a) (1988) (emphasis added). Defendant contends that once so instructed by Commerce, Customs performs merely a ministerial task in assessing interest on an importer's underpayment of estimated antidumping duties.

Defendant asserts that it is the *requirement* of a cash deposit if there is a positive estimated margin that triggers the assessment of interest, not the actual tender of a cash deposit which, given the cash deposit rate of zero, plaintiff was not required to make. In *Timken,* Commerce did not assess interest on entries of importers who did not make cash deposits of estimated antidumping duties but instead were permitted to post bonds to secure potential liabilities arising from a Treasury dumping finding. *Timken,* 15 CIT at 527–28, 777 F.Supp. at 22. The court upheld Commerce's interpretation of 19 U.S.C. § 1677g that, " 'amounts deposited' refer only to cash deposits of estimated antidumping duties upon entry and not to other kinds of security such as a bond," as reason-

able in light of the legislative history, the change in legislation, and Congress' intent. *Id.* at 532–33, 777 F.Supp. at 25–26. Defendant attempts to distinguish *Timken* from the instant case, arguing that at the time of entry of the merchandise in *Timken,* Commerce had not yet published its first administrative review of the dumping finding establishing reliable estimates of dumping, and for that reason, permitted respondents to continue to post bonds to secure payment in place of cash deposits. Plaintiff's entries here were subject to a 1971 Dumping Finding under the 1921 Act, which did not require cash deposits of estimated antidumping duties. The *Timken* finding was under the same prior act. Two subsequent administrative reviews by Commerce, however, set cash deposit rates for covered televisions, although the stated rate for Toshiba televisions was zero. Defendant argues that because plaintiff's goods were subject to a "zero cash deposit rate," interest may be assessed on the underpayment of the actual antidumping duties assessed, which was 35.4% *ad valorem* pursuant to the 1991 administrative review. Defendant places emphasis on the court's language in *Timken* stating, "the requirement to make cash deposits of estimated duties, under the duty order, triggers the interest provision. Without the duty order, the importer has no obligation to make a cash deposit and consequently no obligation to pay interest." *Timken,* 37 F.3d at 1477. Defendant claims that once plaintiff became obligated to make a cash deposit, if any margin were to be found, it became liable for interest even though the required amount of the deposit was zero in this instance.

■ Defendant thus argues that jurisdiction lies pursuant to 28 U.S.C. § 1581(c) as Commerce, not Customs, made the decision to require cash deposits of estimated antidumping duties through its review determination, which triggered the imposition of interest on plaintiff's underpayment of such duties. Whatever the merits of the distinguishment of *Timken* presented here, Commerce did not make it known publicly before the final determination such that the issue could be challenged under 28 U.S.C.

§ 1581(c). The Court of Appeals for the Federal Circuit in *Timken* stated:

> [t]he "amounts deposited" term of section 1677g(a) thus refers to a deposit of estimated duties. Section 1673e(c) clearly separates bonds or other securities from "deposit[s] of estimated antidumping duties." Accordingly, "amounts deposited" in section 1677g(a) refers solely to cash deposits of estimated duties provided under sections 1671e(a)(4) and 1673e(a)(3). Section 1677g(a)'s "amounts deposited" language does not encompass bonds.

37 F.3d at 1476. Given the statute's reference to "amounts deposited" and the language in *Timken* interpreting that term, the court finds that at the time of the administrative review and until interest was demanded at liquidation, plaintiff did not have fair notice that interest would be assessed on entries made with, at most, a continuous entry bond as security. Defendant claims that plaintiff had adequate notice that it may be subject to antidumping duties and interest on the underpayment of such duties because plaintiff was asked by Customs to refile an entry form to indicate that plaintiff's merchandise was subject to the 1971 Dumping Finding. While the court agrees that plaintiff had notice as to its possible liability for antidumping duties, the court finds that plaintiff did not have timely notice of its liability for interest. Accordingly, jurisdiction under 28 U.S.C. § 1581(c) providing review for a challenge to the administrative review determination was not available to plaintiff.

■ As 28 U.S.C. § 1581(c) did not provide an adequate remedy, and plaintiff did not voluntarily forego this remedy, plaintiff could challenge Commerce's determination as soon as it was made aware of it under 28 U.S.C. § 1581(i).[3] The court notes, however, that for relief to be available under § 1581(i) at the time of liquidation, Commerce would have had to instruct Customs to assess interest on plaintiff's entries in some unequivocable way so that plaintiff could know that

Commerce was making a determination adverse to plaintiff, rather than what could reasonably be interpreted as Customs' failure to obey Commerce's instructions to assess interest on underpayments of *amounts deposited.*

Jurisdiction for actions challenging Customs' failure to follow Commerce's actual liquidation instructions (Commerce's private intentions would appear irrelevant on this point) is found under 28 U.S.C. § 1581(a). *See American Hi–Fi*, Slip Op. 95–182, at 3–5, 1995 WL 684074. *Cf. Nichimen America, Inc. v. United States*, 938 F.2d 1286, 1292 (Fed.Cir.1991) (Customs' decision protestable even though affecting antidumping duties).

■ In addition, at some point a cause of action arose that would be subject to jurisdiction under 28 U.S.C. § 1581(i). That is, as 28 U.S.C. § 1581(c) was manifestly inadequate, under 28 U.S.C. § 1581(i) the court could determine if Commerce's instruction to Customs, whatever it is construed to mean, was correct. Defendant did not plead the statute of limitations as a defense to a cause of action under 28 U.S.C. § 1581(i). The court will assume for the sake of argument, however, that defendant could renew its motion to dismiss once again, arguing that an agent of the United States may not waive such a defect. Assuming, *arguendo*, that to be the case, the court would find that a cause of action challenging a determination does not accrue until the determination is made known. *St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 964 (Fed.Cir. 1992) (stating "a claim does not accrue until the aggrieved party reasonably should have known about the existence of the claim"). As indicated, no evidence was produced indicating Commerce had made such a determination public at the time of liquidation or at any time prior to two years before this action was commenced. *See* 28 U.S.C. § 2636(h) (28 U.S.C. § 1581(i) action barred unless commenced within two years after the cause of action first accrues).

---

3. Section 1581(i)(4), Title 28, United States Code provides in relevant part that the court "shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—administration and enforcement with respect to the matters referred to in ... subsections (a)–(h) of this section." 28 U.S.C. § 1581(i)(4) (1988).

The court now turns to whether Custom's assessment of interest on plaintiff's entries was proper. That is, what did the liquidation instruction mean and what does 19 U.S.C. § 1677g require? As indicated, plaintiff alleges that interest may not be collected when goods are entered under bond and without cash deposits, citing *Timken*. In this case, Customs treated plaintiff's continuous entry bond as security for antidumping duties as follows: (1) plaintiff was allowed to enter its merchandise without making a cash deposit because it was assigned no positive estimated antidumping duty amount and (2) Customs later made a demand upon the bond for payment of antidumping duties and interest eventually assessed on those duties. *See* Pl.'s Reply to Def.'s Opp'n to Mot. For Summ.J., Ex. C (Formal Demand on Surety for Payment of Delinquent Amounts Due). Furthermore, plaintiff cites an agreement between Commerce and Customs, entitled, "Memorandum of Agreement Between [Commerce] and [Customs] Concerning Acceptable Security For Release of Merchandise Subject to Antidumping and Countervailing Duty Proceedings," *reprinted in* Treasury Decision 85–145 ("T.D. 85–145"), which appears to allow Customs, at its discretion, to accept a continuous importation and entry bond as security for estimated antidumping duties when the estimated antidumping duties are less than 5 percent *ad valorem*. The decision provides in relevant part:

> Unless specifically instructed by the Secretary of Commerce or a designee to accept another form of security or a cash deposit for estimated duties, the U.S. Customs Service may accept, at its discretion, any one of the following forms of security for payment of estimated antidumping or countervailing duties, or both, on merchandise entered for consumption in the United States:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (3) If the amount of the estimated antidumping or countervailing duty is less than 5 percent *ad valorem* (or the equivalent), a continuous basic importation and entry bond, as described in 19 C.F.R. 113.62, in an amount sufficient to cover the amount of the estimated antidumping or counter-

vailing duty, or both, determined by the Secretary of Commerce, and all other entry bonding requirement; . . . .

T.D. 85–145, *reprinted in* 19 Cust.B. & Dec. 331, 332 (1985).

■ Defendant argues, however, that Customs had no authority to accept plaintiff's continuous importation and entry bond as security for estimated antidumping duties as a bond cannot provide such security and that plaintiff's reliance on T.D. 85–145 is misplaced. Defendant claims that the language of the agreement clearly makes bonds inappropriate as security for estimated antidumping duties when Commerce instructs Customs to require a cash deposit. Defendant claims that Customs was specifically instructed by Commerce to accept only a cash deposit for estimated duties and thus, was not allowed to accept a bond as security for estimated or, we presume, potential antidumping duties. The instruction, of course, contains no specific instruction on security if cash is not deposited because the estimated rate is zero. The instruction simply mirrors the statute, 19 U.S.C. § 1677g. Thus, the issue remains, does that statute require interest if a dumping margin is not yet found for particular goods, but a duty order or its equivalent is outstanding?

As found in *Timken*, the statute is not clear on its face. *Timken*, 37 F.3d at 1474. The statute can only be understood in the context of the entire statutory scheme. *Id. Timken* was concerned with goods entered before a Commerce antidumping duty order requiring cash deposits is issued. The goods there were entered with only a Treasury finding outstanding under which only bonds were required. While *Timken* emphasized that the goods there were entered under bond and "amounts deposited" means cash deposits, it also states that "[w]ithout the duty order" there is "no obligation to pay interest." *Id.* at 1477. *Timken* did not address the issue of interest for goods entered with a zero rate after a Commerce dumping order is issued and cash deposits are required for all goods with more than *de minimis* margins of dumping.

The intention of Congress in requiring interest on "underpayment of amounts deposit-

ed" in 19 U.S.C. § 1677g, as recognized in *Timken*, was to require interest on underpayments of dumping duties after Commerce issues a duty order,[4] except in certain limited cases not present here.[5] *Timken*, 37 F.3d at 1476–77. Under the prior act, Customs would decide on appropriate security, which was based on the value of the merchandise, not the amount of estimated duties. *See* Antidumping Act of 1921, Pub.L. No. 10, § 208, 42 Stat. 9, 14 (1921). In fact, no estimated duty amounts were listed on the original Treasury dumping findings. *See Television Receiving Sets, Monochrome and Color, From Japan*, 35 Fed.Reg. 18,549 (Dep't Treas.1970) (determination of sales at less than fair value); *see also, Television Receiving Sets, Monochrome and Color, From Japan*, 36 Fed.Reg. 4597 (Dep't Treas. 1971) (dumping finding). Congress' concern with the lag between the issuance of the dumping finding and ultimate collection of dumping duties led to the change in the 1979 Act which required cash deposits and interest on overpayments and underpayments of dumping duties. *Timken*, 15 CIT at 530–32; 777 F.Supp. at 24–25; 19 U.S.C. § 1677g(a). On its face 19 U.S.C. § 1677g(a) applies to antidumping duties stemming from Treasury findings and Commerce orders. Because Commerce did not have information to allow it to calculate estimated antidumping duties under Treasury's findings, however, it allowed bonding to continue until it arrived at estimates in its review. *Antidumping, Treatment of Merchandise Subject to a Finding of Dumping in Effect on January 1, 1980*, 45 Fed.Reg. 1084 (Dep't Treas.1980). Thus, there was no cash deposit requirement for anyone subject to only a Treasury finding without a Commerce determination. Cash deposits on any fair basis were virtually an impossibility. *See id.* Commerce's interpre-

tation of 19 U.S.C. § 1677g(a) allowing it to delay interest accrual on duties stemming from dumping findings until a Commerce order was in place was upheld as a reasonable interpretation of the statute. *Timken*, 37 F.3d at 1477. In this case, however, unlike *Timken*, the Commerce review has been completed and cash deposit rates have been set. The amount of underpayment or overpayment is easily determined and there is no reason for deferral of interest accrual.

There is much to defendant's argument that under plaintiff's view, which isolates the *Timken* discussion of entry under bond, someone with a deposit requirement of .06 percent would pay interest on duties later found owing, while the zero rate entrant would not, even if it owed much higher duties. There is not much purpose in rewarding the more deficient entrant. The court would also note that this scheme for interest collection or payment is consistent with 19 U.S.C. § 1505(c) (1994) which requires interest on underpayments and excess deposits of ordinary duties. *See also Travenol Lab., Inc. v. United States*, —— CIT ——, —— —— ——, 936 F.Supp. 1020, 1022–23 (Ct.Int'l Trade July 23, 1996) (noting intent of Congress in amending 19 U.S.C. § 1505 to require interest on excess moneys deposited from date of deposit was to "provide equity in the collection and refund of duties and taxes, together with interest, by treating collections and refunds equally") (citation omitted).

Commerce's interpretation of the statute is reasonable and its distinguishment of *Timken* is appropriate. Until estimates were established by Commerce reviews of dumping findings cash deposits were not required for anyone and interest did not accrue. Per *Timken*, once a duty order issues from Commerce interest begins to accrue, even on

---

**4.** Section 1673e(a) provides in relevant part:
Within 7 days after being notified by the Commission of an affirmative determination ..., the administering authority shall publish an antidumping duty order which— ...
(3) requires the deposit of estimated antidumping duties pending liquidation of entries of merchandise at the same time as estimated normal customs duties on that merchandise are deposited.
19 U.S.C. § 1673e(a)(3) (1988).

**5.** Section 1673e(c)(1), Title 19, United States Code allows the posting of a bond or other security in lieu of the deposit of estimated antidumping duties as required by 19 U.S.C. § 1673e(a) for a 90 day period under certain conditions, *e.g.*, if the investigation has not been designated as extraordinarily complicated; the final determination in the investigation has not been postponed; a determination will be made within 90 days after the date of publication of an order; etc. *See* 19 U.S.C. § 1673e(c)(1) (1988).

duties which stem from an original Treasury dumping finding. 37 F.3d at 1477; 19 U.S.C. § 1677g(a). Whatever action Customs took or is permitted to take under the continuous entry bond originally issued to secure ordinary duties does not alter the interest requirement which arises after the duty order issues. The statute is intended to achieve a balance. If the government exacts too much, it must pay interest on the overage. If the importer pays too little, or nothing at all, it must pay interest on the shortfall.

Accordingly, summary judgment is granted for defendant.

### JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

**IT IS HEREBY ORDERED:** that judgment is rendered in favor of defendant.