Slip Op. 01 - 57

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - x

THE HANOVER INSURANCE COMPANY,    :

                Plaintiff, :

          v.          :  Court No. 94-07-00438

                      :

THE UNITED STATES,

                      :

                Defendant.

- - - - - - - - - - - - - - - - - - x


Opinion & Order

[On cross-motions, partial summary judgment
 for the plaintiff.]


                      Decided:  May 16, 2001

Sandler, Travis & Rosenberg, P.A. (Arthur K. Purcell);
Neville, Peterson & Williams (John M. Peterson) for the plaintiff.

Stuart E. Schiffer, Acting Assistant Attorney General; Joseph
I. Liebman, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (Bruce N. Stratvert); and Office of the Assistant Chief
Counsel, International Trade Litigation, U.S. Customs Service (Beth
C. Brotman), of counsel, for the defendant.

      AQUILINO, Judge:  This action arises out of the manu-

facture in and exportation from Italy of equipment for a Grand

Coulee electrical power plant of the Columbia Basin Project in the

State of Washington.  Its importation was pursuant to contract with

the Bureau of Reclamation, U.S. Department of the Interior, but the

pricing thereof fell within the ambit of determination(s) by other

federal-government department(s) of sales at less than fair value.

See, e.g., <u>Final Results of Antidumping Duty Administrative Review;</u> <u>Large Power Transformers From Italy</u>, 52 Fed.Reg. 46,806 (Dec. 10, 1987). That determination by the International Trade Administration, U.S. Department of Commerce, set 71.40 percent as the margin of the Italian manufacturer's dumping of such equipment at the time of delivery to the United States.

I

According to the amended complaint filed by the above-encaptioned plaintiff surety, the U.S. Customs Service computed that margin to result in an antidumping duty of $292,638.12 on the entry herein, which amount the surety ultimately paid[1]. That complaint alleges jurisdiction pursuant to 28 U.S.C. §§ 1581(a) and 1581(i)(4), pleading causes of action predicated in essence upon averments (i) that the plaintiff never received notice of suspension of liquidation, as required by 19 U.S.C. §1504(c); (ii) that it also never received notice of suspension on Customs Form 4333-A, as required by 19 C.F.R. §159.12(c); (iii) that the price payable by the United States through the Bureau of Reclamation included import duty and was subject to mandatory adjustment under which the government was obliged to absorb duties, including any for dumping;

---

[1] Plaintiff's single consumption entry bond on Customs Form 7551 was in the name of The Legnano Electric Corporation, the nominal importer of the merchandise manufactured by Industrie Elettriche di Legnano, which firm a decree of the Italian Ministry of Industry placed under "Extraordinary Administration" by a government-appointed commissioner subsequent to the entry herein. <u>See</u> <u>Nuove Industrie Elettriche di Legnano S.p.A. v. United States</u>, 14 CIT 334, 335, 739 F.Supp. 1567, 1569 (1990).

(iv) that, under the terms of the government contract, the assessment of additional duties triggered an increase in the contract price of the merchandise, which, in turn, should have caused an equivalent increase in its United States Price, resulting in a determination that no antidumping duties were due; and (v) that the United States have been unjustly enriched by acquiring the equipment via the lowest public bid price and thereafter also collecting antidumping duties thereon.

In its answer to the amended complaint, the defendant denies, among other allegations, that this Court of International Trade has subject-matter jurisdiction over plaintiff's Counts III, IV and V, pleading that those purported causes of action sound in government contract, which is the statutory province of the United States Court of Federal Claims.  As for the other two causes posited by the plaintiff, the defendant denies that this court has jurisdiction pursuant to 28 U.S.C. §1581(i) or that the plaintiff has properly invoked jurisdiction under section 1581(a).

A

This joinder of issue has been followed by a motion for (partial) summary judgment on the part of the plaintiff and a cross-motion by the defendant for similar summary relief.  The gravamen of the surety's motion is that the subject entry was liquidated by operation of law since Customs failed to provide notice

of suspension of liquidation and that the Service's assessment of
the antidumping duties was erroneous in that it failed to follow
the Commerce Department's liquidation instructions. This motion is
accompanied by a required statement of material facts as to which
it is contended there is no genuine issue to be tried within the
meaning of then-applicable CIT Rule 56(i)[2]. It states, in perti-
nent part:

> 12. Section 1.1.6 of the "Specifications" identified
> in paragraph 11 above[3] provides that "the contract
> price" includes all applicable duties paid upon importa-
> tion. Section 1.1.6 also provides that the contract
> price shall be increased by the amount of any duty
> increase assessed after the contract property is im-
> ported, resulting from any "statute, court decision,
> written ruling, or regulation", which requires the
> contractor (importer) to "pay or bear the burden" of such
> duty "or increase in the rate thereof" which would not
> otherwise have been payable on such transactions or
> property.
>
> 13. Antidumping duties assessed on imported mer-
> chandise under 19 U.S.C. §1675[] constitute statutory
> "duties" and/or "increases" in the rate of duty, within
> the meaning of Section 1.1.6 of the "Specifications"
> identified . . . above. The Commerce Department's <u>Final</u>

---

[2] This requirement of amended Rule 56 has been relettered *(h)*,
effective May 1, 2000.

[3] This statement (erroneously) has two preceding paragraphs
numbered *11*, the first of which refers to a Solicitation DS-7371
that

> included a form issued by the Bureau of Reclamation,
> numbered 7-1481 (9-76) and entitled "Specifications,
> Division 1 - General Requirements". Section 1.1.6 of
> these Specifications, entitled "Federal, State, and Local
> Taxes", discusses the affect of federal, state, and local
> taxes and duties on "the contract price".

Results in 52 Fed.Reg. 46,806, imposing antidumping duty margins on merchandise previously imported by Legnano, required Legnano, and the plaintiff as surety, to "pay or bear the burden" of the duty increase.

14. The . . . Final Results . . . constitute[] a "written ruling" within the meaning of . . . Section 1.1.6.

15. Liquidation of the subject entry was suspended by statute in accordance with 19 U.S.C. §1675(a) (1982).

16. On or about February 2, 1988, [] Customs . . . issued . . . Information Exchange ("C.I.E.") number N-169/70 (Supplement 13), setting forth the "Master List" and indicating the actual antidumping duty applicable to the entry in question was $292,638.12. . . .

17. . . . Customs . . . liquidated the merchandise on June 10, 1988, together with interest on the antidumping duties . . . through the date of liquidation.

18. Legnano never paid the antidumping duties in question, or any interest accruing thereon.

19. The first demand made upon the . . . surety was November 4, 1988. Plaintiff filed a protest . . . on January 23, 1989 in order to challenge the demand . . ..

20. In the Ruling dated March 22, 1994 . . ., the District Director of Customs (Seattle) granted plaintiff's protest . . . with respect to the applicability of interest, pursuant to . . . Headquarters' decision on Application for Further Review dated March 8, 1994 (HQ 224397), but denied plaintiff's protest with respect to the . . . antidumping duties. Customs determined in the 1994 Ruling that Hanover's protest was timely filed.

21. On or about April 7, 1994, plaintiff tendered and the . . . Service received payment in the amount due . . ..

22. Defendant is the same entity which purchased the subject merchandise through its Department of Interior . . . at a price which the defendant determined to be dumped.

*   *   *

26. The "Master List" issued by the Treasury Department . . . directed . . . Customs . . . to notify . . . Service Headquarters of any "information on file which might affect the appraised value under the anti-dumping provisions." C.I.E. number N-169/70 (Supplement 13). If such information was on file, Customs was instructed to "suspend liquidation of the affected entries until a decision is made concerning the applicability of the additional information."

27. Under the terms of the Contract, the assessment of additional duties, as evidenced by the assessment instructions in the Master List, triggered an increase in the contract price for the imported merchandise. This, in turn, should have caused an equivalent increase in the "United States Price" for the merchandise, resulting in a determination that no antidumping duties were due.

28. . . . Customs had an obligation to follow the Master List instructions, and having been fully aware of the price adjustment clause of the Contract, the District Director of Customs (Seattle) should have notified . . . Headquarters and adjusted the United States Price of the goods to offset the amount of antidumping duties (and other duties) found to be due.

29. Customs failed to appraise and liquidate the merchandise in accordance with the price adjustment clause in the Contract, and in accordance with the instructions from the Treasury Department (via the Commerce Department) contained in the "Master List".

In its response to this statement, the defendant admits paragraphs 15, 16, 21 and 26. It admits paragraphs 17, 19, 20 and 28 in part. Its denials of portions of those four paragraphs and of the other paragraphs (11 (first), 12, 13, 14, 18, 22-24, 27 and 29, supra) in toto also aver that such contradiction does not signify the existence of issues of material facts which would preclude summary judgment, albeit in favor of the defendant.

Defendant's own Statement of Additional Material Facts as to Which

There Is No Genuine Issue to be Tried is as follows:

> 1.  Plaintiff's searches for notices of suspension in connection with the subject entry were performed for the first time by (a) Michael M. Tracey in 1988, (b) Mary Beth Duquette (Myers) in 1994, and (c) Ronald Ritland on or about the date of his affidavit, July 28, 1998.
>
> 2.  Customs computer records indicate that notices of suspension were issued to plaintiff, as well as the importer of record, in November 1981, November 1982, and November 1983, at their respective proper addresses.
>
> 3.  At the time of entry, the importer of record submitted a bond to Customs in the amount of $358,000 to cover potential antidumping duty liability on the subject merchandise, pursuant to the antidumping finding in Treasury Decision 72-161.

The plaintiff denies paragraphs 2 and 3, while admitting

in part and denying in part the first paragraph of this statement.

II

The defendant characterizes as "new"[4] the claim in

plaintiff's summary-judgment motion that the assessment of the

antidumping duties by Customs was erroneous in that the Service

failed to follow the Commerce Department's liquidation instruc-

tions, and it proceeds to argue that this claim is not

> "related to the same administrative decision listed in section 514 of the Tariff Act of 1930 that was contested in the protest." See 28 U.S.C. § 2638. The legislative history of section 2638 reveals that any newly raised ground must fall within the same category as the decision contested in the protest.  . . .

---

[4] Defendant's Memorandum in Support of its Motion for Summary Judgment, p. 25.

> Plainly, Hanover's new claim fails to meet the requirements of section 2638. Indeed, this new claim, in essence, challenges the underlying dumping determination; thus, this Court lacks jurisdiction over such claim.

Defendant's Memorandum, pp. 25-26 (other citations omitted).

Of course, if this claim were indeed aimed at the underlying dumping determination, the court would readily concur that it lacks jurisdiction to hear and decide such subject pursuant to 28 U.S.C. §1581(a). But this court is unable to conclude that the claim actually does invoke section 1581(c) or a basis of subject-matter jurisdiction other than that pleaded by the plaintiff, namely, 1581(a).

That section requires that issues brought thereunder to this Court of International Trade must have been properly protested per 19 U.S.C. §1514 (1994), subsection (a) of which Title 19 section enumerates the grounds for protesting "decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to", among others,

> . . . (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof; . . ..

See, e.g., American Hi-Fi Int'l, Inc. v. United States, 19 CIT 1340 (1995), citing Mitsubishi Elec. America, Inc. v. United States, 44 F.3d 973 (Fed.Cir. 1994). And plaintiff's protest appears to have been pursuant to this subsection (a)(5) from the beginning, e.g.:

2.    We hereby protest the liquidation or reliquidation
      of the above entry with increased duties represent-
      ing antidumping duties.  The surety herein did not
      issue a bond for the payment of antidumping duties
      covering this entry.

3.    We protest liquidation or reliquidation with dump-
      ing duties reflected on the demand on surety in
      excess of the amount reflected in the assessment
      instructions for this entry in C.I.E. N-169/70. . .
      and interest calculated from an incorrect princi-
      pal . . . in violation of 19 U.S.C. §1673e(c)(3).

Defendant's Memorandum, Exhibit 6, third page.


        The part of the Customs Courts Act of 1980 which the

defendant cites, 28 U.S.C. §2638, provides that, in any civil

action

    in which the denial, in whole or in part, of a protest is
    a precondition to . . . commencement . . ., the court, by
    rule, may consider any new ground in support of the civil
    action if such new ground --

        (1) applies to the same merchandise that was the
    subject of the protest; and

        (2) is related to the same administrative decision
    listed in section 514 of the Tariff Act of 1930 that was
    contested in the protest.


To the extent plaintiff's contention that Customs failed to follow

Commerce's instructions is genuinely "new", according to the

foregoing provision it need only apply to the same merchandise and

be related to the same Service decision, which clearly is the case

at bar.   That the *reasons* for contesting liquidation may be

different is not controlling, only that they lie within 19 U.S.C.

§1514(a).   See, e.g., C.L. Hutchins & Co. v. United States, 67

Cust.Ct. 60, C.D. 4252, 331 F.Supp. 318 (1971) (jurisdiction over

new claim upheld as within the same category of protestable decision). Also, the question of jurisdiction under section 1581(a) turns on which agency makes the decision. See, e.g., American Hi-Fi Int'l, Inc. v. United States, supra.

The defendant has no support for its position that the "essence" of plaintiff's "new" claim is a challenge to the underlying dumping determination. The plaintiff does not contest that determination, rather that Customs liquidated the subject entry without reporting the escalation clauses in the contract as "any information on file which might affect the appraised values" of the goods, as required by Commerce's liquidation instructions themselves. As has been pointed out, 19 U.S.C. §1514(a)

> contemplates that both *legality* and correctness of a
> liquidation be determined, at least initially, via the
> protest procedure. The wording . . . makes it clear that
> *any* challenge to the propriety of a liquidation . . .
> must be through this statute.

LG Elec. U.S.A., Inc. v. United States, 21 CIT 1421, 1426, 991 F.Supp. 668, 674 (1997) (emphasis in original), quoting United States v. A.N. Deringer, 66 CCPA 50, 55, 593 F.2d 1015, 1020 (1979). Indeed, "[j]urisdiction for actions challenging Customs' failure to follow Commerce's actual liquidation instructions . . . is found under 28 U.S.C. §1581(a)." American Hi-Fi Int'l, Inc. v. United States, 20 CIT 910, 916, 936 F.Supp. 1032, 1037 (1996); ABC Int'l Traders, Inc. v. United States, 19 CIT 787, 791 (1995) (claim

that Customs failed to follow Commerce's liquidation instructions "may be brought before the court under 28 U.S.C. §1581(a) . . . after denial of protests by Customs").

III

The defendant takes the position that, under the Tariff Act of 1930, as amended, notice to an importer of suspension of liquidation of an entry was sufficient to forego liquidation at the rate and amount of duty posited by it at the time of entry.  That is, notice to a surety of such suspension was not necessary.

The amended section of that act provided at the time of entry herein:

**(a) Liquidation**

Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:

(1) the date of entry of such merchandise . . .

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer, his consignee, or agent.  . . .

**(b) Extension**

The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer, his consignee, or agent in such form and manner as the Secretary shall prescribe in regulations, if . . .

(2) liquidation is suspended as required by statute or court order; . . ..

**(c) Notice of suspension**

If the liquidation of any entry is suspended, the Secretary shall, by regulation, require that notice of such suspension be provided to the importer or consignee concerned and to any authorized agent and surety of such importer or consignee.

19 U.S.C. §1504. The regulations promulgated in conjunction with this statute were as follows:

**§ 159.11    Entries liquidated by operation of law.**

(a) *Time limit generally*. Except as provided in §159.12, an entry not liquidated within 1 year from the date of entry of the merchandise . . . shall be deemed liquidated by operation of law at the rate of duty, value, quantity, and amount of duties asserted by the importer at the time of filing an entry summary for consumption in proper form . . ..

**§ 159.12    Extension of time for liquidation.**

(a) *Reasons* -- (1) *Extension*. The district director may extend the 1-year statutory period for liquidation for an additional period not to exceed 1 year if:

(i) *Information needed by Customs.* Information needed by Customs for the proper appraisement or classification of the merchandise is not available, or

(ii) *Importer's request*. The importer requests an extension in writing before the statutory period expires and shows good cause why the extension should be granted. . . .

(2) *Suspension*. The 1-year liquidation period may be suspended as required by statute or court order.

(b) *Notice of extension.* If the district director extends the time for liquidation, as provided in paragraph (a)(1) of this section, he promptly shall notify the importer or the consignee and his agent and surety on Customs Form 4333-A, appropriately modified, that the time has been extended and the reasons for doing so.

        (c) *Notice of suspension*.  If the liquidation of an
   entry is suspended as required by statute or court order,
   as provided in paragraph (a)(2) of this section, the
   district director promptly shall notify the importer or
   the consignee and his agent and surety on Customs Form
   4333-A, appropriately modified, of the suspension.

19 C.F.R. §§ 159.11, 159.12 (1980).


        The duty of the court is to give effect to the intent of

Congress, and in doing so the first reference is to the literal

meaning of the words adopted.  E.g., Flora v. United States, 357

U.S. 63, 65 (1958).  See also Kelly v. Robinson, 479 U.S. 36, 43

(1986); Madison Galleries, Ltd. v. United States, 870 F.2d 627, 629

(Fed.Cir. 1989) (the "starting point in every case involving

construction of a statute is the language itself").  Moreover, the

inquiry

   must cease if the statutory language is unambiguous and
   "the statutory scheme is coherent and consistent." . . .
   The plainness or ambiguity of statutory language is
   determined by reference to the language itself, the
   specific context in which that language is used, and the
   broader context of the statute as a whole.

Robinson v. Shell Oil Co., 519 U.S. 337, 340-41 (1997), quoting

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240

(1989), and citing Connecticut Nat'l Bank v. Germain, 503 U.S. 249,

253-54 (1992), Estate of Cowart v. Niklos Drilling Co., 505 U.S.

469, 477 (1992), and McCarthy v. Bronson, 500 U.S. 136, 139 (1991).

Interpretation must "not be guided by a single sentence or member

of a sentence" but by the "provisions of the whole law, and . . .

its object and policy."  Philbrook v. Glodgett, 421 U.S. 707, 713

(1975) (citations omitted).

The defendant contends that the plain meaning of section 1504, supra, supports its position that notice to a surety is not required for an extension of liquidation due to suspension by statute or court order.  Under the statute, liquidation is deemed to occur one year from the date of entry, "[e]xcept as provided in subsection (b)".  19 U.S.C. §1504(a).  Since that subsection does not provide for sureties, even though suspension is one basis for extension, the argument is that no notice was required in this case.  See Defendant's Memorandum, pp. 7-10.

On its face, however, the statute is not unambiguous, and the court thus cannot rely exclusively on subsection (b)'s enacted language.  In such a circumstance, "congressional intent is particularly relevant."  United States v. Hohri, 482 U.S. 64, 71 (1987).  While section 1504(b), supra, does not specify notice to sureties, subsection (c) explicitly requires notice to them of suspension.  In short, subsections (a), (b) and (c), read together, are not perfectly "coherent and consistent", and the intent of Congress cannot be gleaned solely from their erstwhile words.

The history of section 1504 does reflect reasonably-clear legislative intent.  The primary justification for requiring notice to sureties under subsection (c) was to minimize risk of loss.  See H.R. Rep. No. 95-621, p. 25 (1977); S. Rep. No. 95-778, p. 32 (1978).  The latter report (of the Senate Finance Committee) noted that prior to the enactment of the section there was no law re-

quiring liquidation to be completed within a specific time period.

See S. Rep. No. 95-778, p. 31.  It stated that subsection (c) would

require notice of any suspension of liquidation to be given to the

importer or consignee concerned and to any authorized agent and

surety of such importer or consignee.  See id. at 32.  The report

explained that the law was designed to

> increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction.  Under the present law, an importer may learn years after goods have been imported and sold that additional duties are due, or may have deposited more money for estimated duties than are actually due but be unable to recover the excess for years as he awaits liquidation.  Surety companies, which are jointly liable with importers for additional duties, would be better able to control their liabilities. Sureties would also be better protected against losses resulting from the dissolution of their principals in instances where there has been undue delay in liquidating entries.

Id.  Similarly, the House Ways and Means Committee Report explains

that subsection (c)

> provides notice of any suspension of liquidation to the importer or consignee concerned and to any authorized agent and surety of such importer or consignee.  The addition of this subsection gives notice to the sure[t]y companies and other third parties that there is a potential for loss.
>
> Thus, the sureties can take appropriate measures upon receiving this notice to make sure that at least as to continuing activities, the risk of loss will be minimized.

H.R. Rep. No. 95-621, p. 25.  Indeed, for the Customs Service to

extend the liquidation period based on a suspension without

notifying the surety would seemingly diminish this legislative

purpose.

In addition to the legislative history, some case law supports an interpretation requiring notice to sureties of suspension of liquidation.  In <u>Old Republic Ins. Co. v. United States</u>, 10 CIT 589, 596, 645 F.Supp. 943, 950 (1986), for example, the court held that notice to the surety was not required for a valid *extension* when notice was given to the importer.  That opinion noted different treatment of sureties with regard to suspension, to wit:

> Suspension of liquidation is one ground upon which an extension may be granted.  . . . Pursuant to the statutory scheme, it appears that if liquidation has been suspended and the time for liquidation will be extended as a result, then the Secretary must tell the importer or consignee and their authorized agent and surety of the suspension, but need only notify the importer, the consignee, or agent of the extension.  Thus, if the extension does not involve a suspension there would be no requirement of notice to the surety under the statute.

10 CIT at 595 and 645 F.Supp. at 949, n. 14 (citation omitted).

Finally in 1993, Congress amended the statute to require notice to sureties of <u>all</u> extensions of liquidation.  The report of the House Ways and Means Committee commented on the version of section 1504 at issue herein in explaining the reasons for the legislative confirmation:

> With regard to notification of sureties, the bill corrects an omission in existing law and <u>codifies existing administrative practice.  Presently, Customs is only required to provide notice of an extension of liquidation of an entry to sureties when the liquidation is suspended by statute or court order</u>.  The statute does not require notice to be sent to the surety when liquidation is extended because Customs requires more informa-

tion or when the importer requests an extension.  The bill will now require notification of sureties in all three instances.

H.R. Rep. No. 103-361, pt. 1, p. 139 (1994) (emphasis added). Obviously, this confirmed the view within Congress that the statute as it existed required notice to sureties of suspension of liquidation.

In sum, this court, in the light of the legislative history (including the subsequent congressional confirmation), as well as of the administrative approach and judicial interpretation, concludes that Customs had to have notified the plaintiff of the suspension in extending the period of time within which to liquidate Legnano's entry.

IV

The defendant asserts that the Service "gave notice of the suspension to the surety".  Defendant's Memorandum, p. 7. Hanover disagrees.  Each side now moves for summary judgment upon its respective stance.  As a rule, such judgment

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CIT Rule 56(c) (2000).  Summary judgment will not lie, however, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Moreover, when there are

cross-motions for summary judgment, a court must decide each motion by interpreting the evidence submitted by the moving party in a light most favorable to the opposing party.  See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In cases turning on the alleged giving of notice and lack of receipt thereof, there is a presumption that

> letters or other communications, properly addressed, stamped, and deposited in the mail, are received by the addressee in due course.  . . . That presumption is rebuttable by proof of non-receipt.  . . .
>
> Where a notice is required to be given by Customs officials, the burden of going forward with the evidence initially falls upon the plaintiff because the notice is deemed to have been given by virtue of the presumption of regularity which attaches to official acts.  However, the burden of proof then is on the Government because it is the Government's statutory responsibility to provide the notice.  The proofs offered by a plaintiff at this point are directed toward negating the presumed delivery by way of evidence of non-receipt, non-issuance, or non-delivery of the notice.  When the plaintiff has met this initial requirement, the burden of going forward shifts to the Government to establish that notice was given.  . . .

Intra-Mar Shipping Corp. v. United States, 66 Cust.Ct. 3, 5-6, C.D. 4160 (1971) (citations omitted).  See also Int'l Cargo & Sur. Ins. Co. v. United States, 15 CIT 541, 544, 779 F.Supp. 174, 177 (1991); F.W. Myers & Co., Inc. v. United States, 6 CIT 215, 215-16, 574 F.Supp. 1064, 1065 (1983).

### A

It has been held that an affidavit from a plaintiff importer's record-keeper, stating that an extension notice had not been received, was sufficient to rebut the presumption that notice

was in fact given.  See, e.g., Enron Oil & Transp. Co. v. United States, 15 CIT 511 (1991), vacated and remanded on other grounds, 988 F.2d 130 (Fed.Cir. 1993); Int'l Cargo & Sur. Ins. Co. v. United States, 15 CIT at 544, 779 F.Supp. at 177 ("The presumption is not conclusive, and may be rebutted by a declaration or other evidence indicating that notice was not received").

Here, the plaintiff has submitted affidavits from the Hanover employees and broker responsible for handling suspension notices received from Customs.  The sum and substance of each affiant is that he or she has no recollection of ever receiving or reviewing a Notice of Suspension of Liquidation for Legnano Electric Corporation entry 81-534208-9 and that The Hanover Insurance Company never received such a notice.  See Plaintiff's Summary Judgment Exhibit F (Affidavit of Michael M. Tracy, para. 10); Exhibit G (Affidavit of Jeannette Heroux, para. 6); Exhibit H (Affidavit of Mary Beth Duquette, para. 10); and Exhibit I (Affidavit of Ronald E. Ritland, para. 6).  In the absence of such receipt, according to these affidavits, no suspension file was established or subsequently located, whereupon the plaintiff claims that "the reasonable inference which may be drawn from the absence of a specific file is that . . . notice was not received." Plaintiff's Response Brief, p. 16.

The court finds that these submissions, at a minimum, rebut the presumption that notice was in fact given.  Cf. G. Weissenberger, Federal Evidence, §803.37, p. 499 (3d ed. 1998):

. . . In a regularly conducted business activity where a person with personal knowledge systematically prepares and maintains records at a time proximate to the occurrence of the event or transaction recorded, comprehensiveness and accuracy may be assumed. Consequently, lack of a record concerning the event is persuasive evidence of its nonoccurrence or nonexistence.

B

Defendant's primary evidence is a computer printout from the Customs extension/suspension history file, accompanied by written attempts under oath by two Service employees to explain standard operating procedures for printing, mailing, and recording notices of suspension of the kind at issue herein. One declarant is of the

opinion that if the history file has a record of an extension or suspension notice for an entry, then the notice was printed and mailed to the address shown on the record . . ..

Defendant's Memorandum, Exhibit 2 (Declaration of Roger Odom, para. 15). Similarly, the second declaration (by Arthur Versich) states:

. . . [W]here, as here, a record of a notice is extracted from the history file, we know that the notice was formatted for printing and copied to the printer spool. These end-of-week programs and printing operations must be performed, and there is no doubt in my mind that where Customs has a record of a notice, the notice was printed at or about the time indicated by the run date.

Id., Exhibit 3, para. 23.

The court finds these submissions by the defendant, at a minimum, undermine plaintiff's motion for summary judgment on the

issue of notice.  Cf. A.N. Deringer, Inc. v. United States, 20 CIT 978 (1996)(judgment entered for Customs after trial involving similar notice printout and explanatory testimony).

C

Viewing this evidence submitted in defendant's motion in a light most favorable to it, however, does not lead this court to conclude that a reasonable trier of fact could not return a verdict for the plaintiff.  On the other hand, the court is also not led by plaintiff's motion to conclude that it could not find for the defendant, given all the papers presented to date.  In other words, the dispositive question of notice, or lack thereof, herein is a material matter which must be addressed at trial and subjected to cross-examination, which has been said to be the surest test of truth and a better security than the oath.

V

In furtherance of the foregoing discussion, defendant's cross-motion for summary judgment must be denied, while plaintiff's motion for (partial) summary judgment can be, and it hereby is, granted, save the issue of the provision by Customs to, and of its receipt by, The Hanover Insurance Company of notice of the suspension of liquidation of The Legnano Electric Corporation's entry 81-534208-9, and also except for the issue of whether the Service failed to follow the Commerce Department's liquidation

instructions[5], which matters must be resolved by trial.

The parties are hereby directed to confer and prepare and present a proposed pretrial order on or before June 29, 2001, by which time a date for the trial will be set.

So ordered.

Decided:  New York, New York
          May 16, 2001

_____
                                        Judge

_____

[5] The plaintiff articulates its stance on this question as follows:

Once Commerce's review was completed, and . . . had issued the Master List setting forth its final de-termination, . . . Customs . . . was required to perform the ministerial task of carrying out the instructions in the Master List . . . [, which] did not merely instruct Customs to liquidate the entries and collect antidumping duties, but also required Customs officers to **first** make inquiry in their files concerning whether they had any information on hand which would have affected the appraisement of the transformers under the antidumping duty laws.  Customs officials at Seattle had such information; however, they failed to forward this information to Customs Headquarters and suspend liqui-dation, as directed, but instead proceeded directly to liquidation of the entry at bar.  Had Customs correctly carried out the Master List instructions, the price escalation clauses of the contract -- directly relevant to the appraisement of the goods for antidumping purposes -- would presumably have been taken into account, eliminating the antidumping duty liability.  Customs' failure to carry out the Master List instructions, therefore, resulted in an improper liquidation and an incorrect and excessive assessment of antidumping duties.

Plaintiff's Memorandum, pp. 50-51 (emphasis in original). Compare Defendant's Memorandum, pp. 1-2, n. 1 and p. 23, n. 11.