Slip Op. 02 - 71

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - x

THE HANOVER INSURANCE COMPANY,      :

                    Plaintiff, :

          v.                    :   Court No. 94-07-00438

                                :

THE UNITED STATES,

                                :

                    Defendant.
- - - - - - - - - - - - - - - - - - x


Memorandum

[Upon trial of Customs Service notice
 to surety of suspension of liquidation,
 judgment for the plaintiff.]


                              Decided:  July 19, 2002


     <u>Sandler, Travis & Rosenberg, P.A</u>. (<u>Arthur K. Purcell</u>); <u>Nev-ille Peterson LLP</u> (<u>John M. Peterson</u>) for the plaintiff.

     <u>Robert D. McCallum, Jr</u>., Assistant Attorney General; <u>John J. Mahon</u>, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Bruce N. Stratvert</u>); and Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service (<u>Beth C. Brotman</u>), of counsel, for the defendant.


          AQUILINO, Judge:  As discussed in the slip opinion 01-57, 25 CIT _____ (2001), filed herein, familiarity with which is presumed, this court was unable to resolve all of the issues raised by the parties' pleadings and subsequent cross-motions for summary judgment.  That opinion did hold that, as a matter of law, the plaintiff surety for the importer of Entry No. 81-534208-9 was entitled to formal notification by the U.S. Customs Service of the

*suspension* of the liquidation of that entry. Customs claims to have provided such notice, which the plaintiff denies, both sides' having submitted affidavits or declarations in support of their respective cross-motions on this issue. The court determined to require the individuals who subscribed to those submissions to appear at a trial and undergo cross-examination upon the long-held belief that that kind of interrogation is the surest test of truth and a better security than the oath. <u>See</u>, <u>e</u>.<u>g</u>., John Henry Wigmore, Treatise on the System of Evidence in Trials at Common Law, vol. 3 (1904); Francis L. Wellman, The Art of Cross-Examination (1903); Sir Matthew Hale, History of the Common Law, ch. 12 (1680).

I

With one exception, excusable *de bene esse*, the original affiants and declarants in this case appeared in open court, where they and other witnesses were subjected to some fine cross-examination by opposing counsel. Their questioning, however, did not transform the sum and substance of the record now more-fully established, and upon which the court makes the following findings of fact[1]:

1. In T.D. 72-161, the U.S. Secretary of the Treasury reported his "finding of dumping" with respect to <u>Large Power Transformers From Italy</u>, 37 Fed.Reg. 11,772 (June 14, 1972).

---

[1] To the extent the court's findings in slip opinion 01-57 are germane to that which has now been tried, they are hereby incorporated herein by reference.

2. That finding of dumping remained in full force and effect during the administrative dispute underlying this case.

3. In fulfillment of its contract per U.S. Department of the Interior, Bureau of Reclamation Solicitation No. DS-7371, Power Transformer, Grand Coulee Left Powerplant, Columbia Basin Project, Washington[2], Industrie Elettriche di Legnano, Italy manufactured and shipped equipment to that electrical facility.

4. The contract equipment entered the United States at the port of Seattle, Washington, Entry No. 81-534208-9.

5. The importer of record was The Legnano Electric Corporation, as consignee for the Bureau of Reclamation.

6. On or about November 25, 1980, Frank P. Dow Co., Inc., as attorney-in-fact for The Hanover Insurance Company, executed an Immediate Delivery and Consumption Entry Bond (Single Entry) on Customs Form 7551 for Entry No. 81-534208-9 in the amount of $358,000.00.  See Defendant's Exhibit A.

7. F.W. Myers & Company succeeded Frank P. Dow Co., Inc. as the agent for The Hanover Insurance Company, the surety with regard to the consumption entry bond herein.

8. Liquidation of Entry No. 81-534208-9 was suspended pursuant to statute.

9. Suspension of liquidation of an entry subject to an outstanding antidumping-duty order pending administrative review thereof by the International Trade Administration, U.S. Department of Commerce ("ITA") is for an indefinite period of time.

---

[2] Plaintiff's Exhibit P-3.

10. Generally, notice of suspension of liquidation pending ITA administrative review was provided only once by the Customs Service.

11. Such notice of suspension of liquidation was provided on Customs Form 4333A.

12. The Customs Form 4333A had space delineated for information encaptioned from left to right "series, type and entry no., date of entry, liquid[ation] code, initial amount, liquidation amount" and below right "importer number, date of liquidation".

13. The parties could not or did not either discover before, or produce at, the trial a Customs Form 4333A bearing any such prescribed information relative to this case.

14. The parties could not or did not either discover before, or produce at, the trial a Customs Form 4333A, or copy thereof, either sent to or received by the plaintiff in this case.

15. The Customs Forms 4333A produced at trial were blank samples, as is the photocopy of one marked and received in evidence herein as Defendant's Exhibit U2.

16. Defendant's Exhibit B in evidence herein is a photo-copy of a Customs computer printout extracted on January 27, 1993 from Service data that references six times the entry at issue herein, three of which include the name and address of the Legnano Electric Corporation and three of which include the name and address of the Hanover Insurance Company, and that also references a mail cycle encoded to reflect particular weeks in 1981, 1982, and 1983.

17. In its <u>Final Results of Antidumping Duty Administrative Review; Large Power Transformers From Italy</u>, 52 Fed.Reg. 46,-806 (Dec. 10, 1987), the ITA set 71.40 percent as the margin of Industrie Elettriche di Legnano's dumping at the time of the entry at issue herein.

18. Pursuant to this ITA final determination, antidumping duties on Entry No. 81-534208-9 were computed to amount to $292,638.12.

19. The Customs Service liquidated Entry No. 81-534208-9 on June 10, 1988.

20. The Legnano Electric Corporation did not remit the antidumping duties or any interest accruing thereon, whereupon the Customs Service made a demand therefor upon the surety.

21. In January 1989, the surety filed a protest with Customs, No. 3001-9-000059, challenging the Service's demand upon it.  <u>See</u> Defendant's Motion for Summary Judgment, Appendix 6 (Defendant's Exhibit O).

22. In ruling HQ 224397, dated March 1994, the Customs Service denied the surety's protest with respect to payment of the antidumping duties demanded but granted it with respect to payment of interest. <u>See</u> Defendant's Motion for Summary Judgment, Appendix 7 (Defendant's Exhibit P).

23. On or about April 7, 1994, the surety tendered and the Customs Service received all of the duties demanded.

24. In its slip opinion 01-57 filed herein, the court held that the affidavits submitted in support of plaintiff's motion for summary judgment, at a minimum, rebutted the presumption that notice to the surety was in fact given, whereupon at the trial the defendant was called upon to adduce its evidence first.

25. The papers for Entry No. 81-534208-9, Defendant's Exhibit A, were timely annotated "S" (for suspension) by the responsible Customs Service officer.

26. The Trade Agreements Act of 1979 went into effect during the calendar year of Entry No. 81-543208-9, at which time the Customs Service was relying on the "old revenue system". Trial transcript ("Tr."), p. 90.

27. The Customs Service's Automated Commercial System or "ACS", upon which the defendant relied at trial, first became operational in 1984. See, e.g., Tr., p. 90.

28. At the time of Entry No. 81-534208-9, Customs Forms 4333A were printed automatically in series and then detached from each other and sealed individually for mailing.

29. Customs Service records reference some 18,000 notices of extensions or suspensions of liquidation to The Hanover Insurance Company during 1981, 1982, and 1983.

30. Most Customs Service notices to The Hanover Insurance Company during 1981, 1982, and 1983 were of extensions, as opposed to suspensions, of liquidation.

31. One employee of The Hanover Insurance Company was responsible for processing all such Customs Service notices during 1981, 1982, and 1983.

32. That one employee of The Hanover Insurance Company responsible for processing all such Customs notices during 1981, 1982, and 1983 was familiar with Service notices of suspension of liquidation on Customs Form 4333A.

33. That one employee of The Hanover Insurance Company responsible for processing all such Customs notices during 1981, 1982, and 1983 has no recollection of having received or reviewed a Service notice of the suspension of the liquidation of Entry No. 81-534208-9.

34. All Customs Service notices to The Hanover Insurance Company of extensions or suspensions of liquidation in 1981, 1982, and 1983 were subject to review and audit by that surety's national underwriting manager.

35. The Hanover Insurance Company's national underwriting manager considered Customs Service notices of suspension of liquidation to be more important than notices of extension of liquidation.

36. The Hanover Insurance Company's national underwriting manager was familiar with Service notices of suspension of liquidation on Customs Form 4333A.

37. The amount of the single entry bond in this case would have made it subject to regular audit by The Hanover Insurance Company.

38. The Hanover Insurance Company established files for bonds and underlying entries subject to its audit.

39. No such audit file was established or later discovered with regard to Entry No. 81-534208-9.

40. F.W. Myers & Company reported monthly to The Hanover Insurance Company on the status of outstanding Customs bonds.

41. F.W. Myers & Company did not inform The Hanover Insurance Company of the Customs Service's suspension of the liquidation of Entry No. 81-534208-9.

42. The Hanover Insurance Company's national underwriting manager was not aware of the outstanding Treasury Department finding of dumping of large power transformers from Italy at the time of Entry No. 81-534208-9.

43. Copies of Customs Service notices of suspension of liquidation involving bonds underwritten by The Hanover Insurance Company were placed in a master file by that surety.

44. No copy of a Customs Service notice of the suspension of the liquidation of Entry No. 81-534208-9 was discovered in the master file for such notices maintained by The Hanover Insurance Company.

45. Customs Service notices of extensions and of suspensions of liquidation involving bonds underwritten by The Hanover Insurance Company were forwarded on a regular basis to F.W. Myers & Company.

46. One employee of F.W. Myers & Company was responsible for receiving and filing all such Customs Service notices forwarded by The Hanover Insurance Company during 1981, 1982, and 1983.

47. That one employee of F.W. Myers Company responsible for receiving and filing all such Customs notices forwarded by The Hanover Insurance Company during 1981, 1982, and 1983 was familiar with Service notices of suspension of liquidation on Customs Form 4333A.

48. That one employee of F.W. Myers Company responsible for receiving and filing all such Customs notices forwarded by The Hanover Insurance Company during 1981, 1982, and 1983 has no recollection of having received from The Hanover Insurance Company a Service notice of the suspension of the liquidation of Entry No. 81-534208-9.

49. That one employee of F.W. Myers Company responsible for receiving and filing all such Customs notices forwarded by The Hanover Insurance Company during 1981, 1982, and 1983 set up files for all Service notices of suspension of liquidation received by her.

50. That one employee of F.W. Myers Company responsible for receiving and filing all such Customs Service notices forwarded by The Hanover Insurance Company during 1981, 1982, and 1983 has no recollection of having established a file for Entry No. 81-534208-9 in conjunction with the suspension of its liquidation.

51. That one employee of F.W. Myers Company responsible for receiving and filing all such Customs Service notices forwarded by The Hanover Insurance Company during 1981, 1982, and 1983 was unable to discover for production in this case any file established for Entry No. 81-534208-9 in conjunction with the suspension of its liquidation.

## II

Each of the government's witnesses who appeared and testified at the trial herein lent support to the long-standing judicial presumption that civil servants carry out their official duties in an orderly and regular manner under the law. Cf. United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926); U.S. Postal Service v. Gregory, 534 U.S. 1, __, 122 S.Ct. 431, 436 (2001).

## A

None of them, however, was able to unrebut the corollary presumption in this case that such expectable regularity resulted in the requisite notice to the surety. Cf. Int'l Cargo & Surety Ins. Co. v. United States, 15 CIT 541, 544, 779 F.Supp. 174, 177 (1991). Two of them, namely, Arthur Versich and Roger Odom, also testified from their acquired perspectives at the Customs Service's centralized computer data center with regard to the matter of Ford Motor Co. v. United States, wherein the court found that the

> computer systems in place at Customs for the preparation and mailing of extension notices are sufficient to give rise to the presumption that Customs properly prepared and mailed the notices of extension of liquidation.

> These notices are presumed to have been received by the plaintiff, who has the burden of proving non-receipt.[3]

The court held that the plaintiff did not satisfy this burden, essentially because the court was

> not persuaded that Ford's internal record retention and transmittal system could account adequately for all incoming mail so as to preclude the misplacement of extension and suspension notices.

21 CIT at 1001-02, 979 F.Supp. at 889.  While that opinion mentions both kinds of notices, in that action *extensions* of liquidation remain the issue, which kind the evidence in this case clearly shows to be much more commonplace and thus numerous and infinitely more difficult to keep track of.  Whatever the problems of the Ford Motor Company in fielding such notices (and even of The Hanover Insurance Company), the record now established at bar reflects a concerted, coordinated effort by the plaintiff to husband each and every one of the much-less-frequent notices of suspension of liquidation received by it from Customs.  Indeed, an anomaly in this case is that, while defendant's exhibit B lists notices of suspension to Hanover in 1981, 1982, and 1983, the standard Service operating procedure has been to provide but one such notice, doubtless due to the indefinite duration of most, if not all, suspensions.

Once, as herein, the government's presumption of notice has been rebutted, it is incumbent upon Customs to prove mailing.

---

[3] 21 CIT 983, 1001, 979 F.Supp. 874, 889 (1997), <u>vacated</u> <u>and</u> <u>remanded</u> <u>for</u> <u>trial</u>, 157 F.3d 849 (Fed.Cir. 1998), <u>dismissed</u> <u>after</u> <u>trial</u>, 24 CIT ___, 116 F.Supp.2d 1214 (2000), <u>rev'd</u> <u>and</u> <u>remanded</u>, 286 F.3d 1335 (Fed.Cir. 2002).

See, e.g., F.W. Myers & Co. v. United States, 6 CIT 215, 216-17, 574 F.Supp. 1064, 1065 (1983), citing Orlex Dyes & Chemicals Corp. v. United States, 41 Cust.Ct. 168, 170, C.D. 2036, 168 F.Supp. 220, 222 (1958).   The Service should best do so by producing an individual involved in delivering its notices to the mail, for example, or having been somehow or -where within the ambit of attempted forwarding to an importer and surety.  See, e.g., United States v. Int'l Importers, Inc., 55 CCPA 43, 52-53, C.A.D. 932 (1968), citing Compass Instrument & Optical Co. v. United States, 47 Cust.Ct. 10, C.D. 2271 (1961); Orlex Dyes & Chemical Corp. v. United States, supra; Clayton Chemical & Packaging Co. v. United States, 38 Cust.Ct. 617, R.D. 8774, 150 F.Supp. 628 (1957).   The defendant has not done so in this case[4], whereupon it became neces-sary for it to adduce

> proof of an invariable custom or usage in an office of depositing mail in a certain receptacle, that the letter in question was deposited in such receptacle, and in addition there must be testimony of the employee, whose duty it was to deposit the mail in the post office, that he either actually deposited that mail in the post office, or that it was his invariable custom to deposit every letter left in the usual receptacle, and that he never failed in carrying out that custom.

United States v. Int'l Importers, Inc., 55 CCPA at 53, quoting

---

[4] Apparently, those particular individual(s) were not Customs officers, rather civilian contractor(s).  See Tr., p. 137.  The one government witness at the trial who could have been a direct participant in the notification process proved not to have been. See id. at 18, 21, 39, 40.  Cf. United States v. Getz Brothers & Co., 55 CCPA 90, C.A.D. 938 (1968)(Customs Deputy Collector testified that he personally processed entries and notices with regard thereto, including stamping, dating, and mailing, always in the presence of a witness).

United States ex rel. Helmecke v. Rice, 281 Fed. 326, 331 (S.D.
Tex. 1922).

Again, the defendant has not done so.  Essentially, the
only document of any moment produced by the defendant is its
exhibit B, which is nothing more than a computer abstract derived
more than a decade later via a program not in existence at the time
notice should have been provided to the surety now at bar.  While
the faith exhibited by defendant's witnesses in their computerized
system(s) may be well-placed, difficult cases such as this should
not be decided upon after-the-fact, electronically-based faith
alone.

B

To assume, on the other hand, acceptable proof of mailing
would raise a presumption of delivery.  See, e.g., Rosenthal v.
Walker, 111 U.S. 185, 193 (1884); Intra-Mar Shipping Corp. v.
United States, 66 Cust.Ct. 3, 5-6, C.A.D. 4160 (1971).  Of course,
that presumption is also rebuttable.  See, e.g., Francis Wharton,
A Commentary on the Law of Evidence in Civil Cases, vol. 2, §1323
(2d ed. 1879).  Indeed,

> [p]roof of mailing is not ipso facto proof that the no-
> tice was given to the importer, where the unrefuted
> testimony is that no notice was received.

Intra-Mar Shipping Corp. v. United States, 66 Cust.Ct. at 6, citing
United States v. Int'l Importers, Inc., supra.  To be sure, to

> require the government to prove not only mailing, but
> actual receipt of Form 4333-A by the importer, would
> erect a virtually unassailable hurdle. Rarely, if ever,
> would the government possess or elicit proof of receipt
> from an importer claiming nonreceipt.

A.N. Deringer, Inc. v. United States, 20 CIT 978, 993 (1996). Cf. Ford Motor Co. v. United States, supra; Prosegur, Inc. v. United States, 25 CIT ___, 140 F.Supp.2d 1370 (2001). Hence, that has not been the approach taken in this case. Rather, the plaintiff has presented its witnesses in open court for cross-examination by government counsel, which, however skillful, did not diminish their original attestations of nonreceipt. Moreover, their testimony buttressed the appropriateness of accepting, *de bene esse*, the affidavit of the other Hanover witness with integral knowledge of the receipt, review, filing, and forwarding of all Customs notices of suspensions of liquidation by the plaintiff[5]. Finally, plaintiff's counsel were able to elicit upon cross-examination of defendant's witnesses the existence of Service glitches. According to Mr. Versich, for example, Customs discovered in 1989, notwithstanding the operation of its more sophisticated "ACS" by then, that several thousand notices, dating back to 1986, had not been actually

---

[5] See, e.g., Tr., pp. 241-43. Compare A.N. Deringer, Inc. v. United States, 20 CIT 978, 981 (1996)(the employee in a similar role at Deringer not called to testify and no explanation for her absence from trial offered by the plaintiff) and Sanford Steel Pipe Products Co. v. United States, 68 Cust.Ct. 192, 195, C.D. 4359 (1972):

> . . . Neither the mailroom girl nor the export manager, who sometimes got mail destined for the import manager, was called as a witness in the case, and their non-appearance as witnesses in the case remains un-explained[;]

with Orlex Dyes & Chemicals Corp. v. United States, 41 Cust.Ct. 168, C.D. 2036, 168 F.Supp. 220 (1958)(the necessary witnesses in the established path of receipt of Customs Service notices each called to testify, thereby buttressing presumption of nonreceipt).

printed and thus delivered.  See Tr., p. 105.  On his part, Mr. Odom admitted that the "old"[6] computer revenue system in effect at the time of Entry No. 81-534208-9 was more prone to errors than the one underlying the problem discovered in 1989.  See id. at 136-37.

C

Be those particular imperfections as they were, whichever side better sustains its burden(s) of proof must be the prevailing party.  And a fair preponderance of the evidence has been held to be that standard in a civil suit like this.  E.g., Addington v. Texas, 441 U.S. 418, 423 (1979); St. Paul Fire & Marine Ins. Co. v. United States, 6 F.3d 763, 769 (Fed.Cir. 1993).  The court of appeals in St. Paul defined preponderance of the evidence in civil actions to mean "the greater weight of evidence, evidence which is more convincing than the evidence which is offered in opposition to it."  6 F.3d at 769, quoting Hale v. Dep't of Transp., 772 F.2d 882, 885 (Fed.Cir. 1985).

Here, the evidence now on the record clearly favors the plaintiff in terms of both weight and content.  In fact, there is little left of defendant's position once the legal presumptions appropriately favoring its role and circumstance were rebutted by the plaintiff with regard to notification by the Customs Service of the suspension of the liquidation of Entry No. 81-534208-9.

---

[6] Tr., p. 90.

III

Plaintiff's preponderance on the issue of notice is so clear-cut that the court hereby concludes that its resolution of the other issue reserved by slip opinion 01-57 for the trial, to wit, whether or not the Customs Service failed to follow the ITA's liquidation instructions[7], is not now necessary.  Judgment will enter accordingly.

Decided:  New York, New York
          July 19, 2002


                                _____
                                Judge

---

[7] See Slip Op. 01-57, p. 22 and 25 CIT ___, n. 5.

_____ J U D G M E N T

UNITED STATES COURT OF INTERNATIONAL TRADE

Thomas J. Aquilino, Jr., Judge

- - - - - - - - - - - - - - - - - - x

THE HANOVER INSURANCE COMPANY,          :

                        Plaintiff, :

            v.          :     Court No. 94-07-00438

                          :

THE UNITED STATES,

                          :

                    Defendant.

- - - - - - - - - - - - - - - - - - x

The parties having interposed cross-motions for summary judgment; and the court in its slip opinion 01-57, 25 CIT ____ (2001), having held that, as a matter of law, the plaintiff surety for the importer of Entry No. 81-534208-9 was entitled to formal notification by the United States Customs Service of the suspension of the liquidation of that entry; and the court having held a trial on the issue of whether or not there had been such notification and having, after due deliberation, rendered a decision thereon; Now therefore, in conformity with said decisions, it is hereby

ORDERED, ADJUDGED and DECREED that the plaintiff recover from the defendant the duties which were paid by it to the United States Customs Service with regard to Entry No. 81-534208-9 and which underlie this case, together with interest thereon as provided by law.

Dated:  New York, New York
       July 19, 2002

_____
                    Judge